### FIRST STATE BANK OF AMARILLO v. T. K. JONES.

No. 2785.  Decided March 8, 1916.

**1.—Judgment—Lien—Record of Title.**

A judgment lien attaches only to such interest in land as the judgment debtor owns. Its holder is not entitled, by its registration, to protection as an innocent purchaser against other interests not matter of record. (P. 630.)

**2.—Same—Trust Deed—Recital of Payment.**

The recital, in an instrument of record, by the holder of a note secured by deed of trust, of its payment in full, made by mutual mistake when but par-tial payment had been made and but part of the incumbered land was released from the mortgage did not render the interest of the mortgagee subject to a

judgment lien against the mortgagor registered after record of such instrument and before the mistake in it was corrected.   (Pp. 630, 631.)

### 3.—Same—Innocent Purchaser.

A release of a part only of the land incumbered by a trust deed, by an instrument which by mistake recited payment in full of the note secured, it having been paid only in part, was sufficient, it seems, to put on inquiry one subsequently acquiring an interest in the land, and prevent his protection as an innocent purchaser, when inquiry would have disclosed the facts.   (Pp. 631, 632.)

### 4.—Case Stated.

A note secured by deed of trust was paid in part and a release of the lien upon a part only of the land incumbered placed on record.   This, by mistake recited payment in full of the note secured.   The mistake was afterward corrected by the parties by another instrument of record; but meantime a judgment creditor of the mortgagor had placed on record an abstract of his judgment.   Held, that his lien attached only to such interest as the judgment debtor actually had; this interest was subject to the mortgagee's equitable right to have the mistaken recital corrected; and the lien of the latter's trust deed prevailed over that of the judgment.   (Pp. 626-633.)

### 5.—Practice in Supreme Court—Rendering Judgment—Scintilla of Evidence.

A judgment lien was placed on record at a time when an instrument was on record from the holder of a note secured by trust deed reciting the payment in full of the note secured by it.   Uncontradicted testimony of the maker and of the holder of the note showed the recital in question to have been made by mistake, and the note to have been paid only in part; the instrument released the lien on a part only of the incumbered land; and another instrument by them, correcting the mistake, was afterwards placed on record.   Held, that the recital of payment in full, as against the uncontradicted evidence of mistake therein, furnished only a scintilla of proof of such payment, not amounting to a conflict.   The Supreme Court, on reversing a judgment giving precedence to the lien of the judgment creditor, should render judgment postponing it to that created by the deed of trust.   (Mr. Justice Hawkins dissents.)   (Pp. 632, 633.)

### 6.—Dissenting Opinion.

Dissenting from the ruling herein, Mr. Justice Hawkins holds:   That recital of payment in full of the note, placed on record by its holder, furnished evidence of such payment; that testimony by the payor and payee of mistake in such recital created a mere conflict in evidence, which, from the judgment, the trial court is presumed to have settled in favor of the theory of payment in full; that the Supreme Court had no authority to set aside such determination; still less had it authority to disregard the conflict and render judgment on an opposite view of the facts.   (Pp. 633-638.)

Error to the Court of Civil Appeals, Second District, in an appeal from Clay County.

Jones sued the bank and others and recovered judgment.   Defendant bank appealed, and on affirmance obtained writ of error.

*W. T. Allen* and *Turner & Rollins,* for plaintiff in error.—That the release was sufficient on its face to show that a mistake had been made, when viewed in connection with the instruments to which it refers is amply sustained by the following authorities:   Carter v. Hawkins, 62 Texas, 393; Ross v. Kornrumpf, 64 Texas, 390; Gaston v. DeSheill, 55 Texas, 509; Willis v. Gay, 48 Texas, 463; Maas v. Tacquard's Exrs.. 33

Texas Civ. App., 40, 75 S. W., 350; Scott v. Hay, 90 Minn., 304, 97 N. W., 106; Cable v. Minn. Stock Yards Packing Co., 47 Minn., 417, 50 N. W., 528.

That the release must be read in connection with the other instruments to which it refers and that Jones can not escape the effect of such other instruments and the recitals therein contained, see Brown v. Chambers, 63 Texas, 131; Hunker v. Estes, 159 S. W., 470.

That it was Jones' duty to follow up the question suggested upon the face of the release in connections with the instruments to which it referred the above cases are authority; and in addition thereto we cite the court to the following cases: Lodge v. Simonton, 23 Am. Dec., 36 (note p. 47); Mercantile Natl. Bank v. Parsons, 40 Am. St. Rep., 299 (note p. 305); Pomeroy Eq. Jur. (3rd ed.), secs. 626-7-8; Convers v. Blumrich, 90 Am. Dec., 230 (239).

The right of the bank to reform the release and make it speak the true intent of the parties was an equitable right not subject to registration, and, therefore, Jones, the judgment creditor, could not acquire a lien by the abstract of judgment which would be superior to the enforcement of such right on the part of the bank to reform the instrument on account of the mutual mistake of the parties thereto. Kelly v. Ward, 94 Texas, 289; Senter v. Lambeth, 59 Texas, 259; Grace v. Wade, 45 Texas, 528; McKamey v. Thorp, 61 Texas, 648; Parker v. Coop, 60 Texas, 111; Yoe v. Montgomery, 68 Texas, 338; Blankenship v. Douglass, 26 Texas, 225; Hawkins v. Willard, 38 S. W., 365; Milby v. Regan, 16 Texas Civ. App., 352, 41 S. W., 374; Harry v. Hamilton, 154 S. W., 637; Allday v. Whittaker, 66 Texas, 669; Ilse v. Seinsheimer, 76 Texas, 459; Silliman v. Taylor, 35 Texas Civ. App., 490, 80 S. W., 65; Ebom v. Cannon's Admn., 32 Texas, 231; 2 Pom. Eq. Jur., sec. 87, 3 Id., sec. 376; Hood Camp of Confederate Veterans v. De Cordova, 92 Texas, 202; Martin v. Nixon, 92 Mo., 26, 4 S. W., 503; Carpenter Paper Co. v. Wilcox, 50 Neb., 659, 70 N. W., 228; Sicher v. Rambousek, 193 Mo., 113, 91 S. W., 68; Fort Smith Mill Co. v. Mikles, 61 Ark., 123, 32 S. W., 493; Kerchner v. Frazier, 106 Ga., 437, 32 S. E., 351.

*R. E. Taylor, Wantland & Parish,* and *Leslie Humphrey,* for defendant in error.—Under the testimony the evidence was conflicting as to whether or not said release was executed through a mistake, and the judgment of the court establishing plaintiff's lien on said premises as superior to the lien of the First State Bank of Amarillo, decided this issue adversely to the appellant's contention. And therefore the appellant is bound by the judgment of the court upon this issue of fact. Burleson v. Tinnin, 100 S. W., 350; American Freehold Land Mort. Co. v. Pace, 23 Texas Civ. App., 222, 56 S. W., 391; Franklin L. Ins. Co. v. Villeneuve, 29 Texas Civ. App., 128, 68 S. W., 203; Heierman v. Robinson, 26 Texas Civ. App., 491, 63 S. W., 657.

The appellant in seeking to enforce a prior lien against the appellee,

a deed of trust which the record shows to have been released at the time of the filing, indexing and recording of appellee's abstract of judgment, stands in the same position as a holder of an unrecorded mortgage, and appellee's judgment lien is prior to any rights asserted by the holder of said deed of trust.    Art. 6824, Rev. Stats. of 1911; Grace v. Wade, 45 Texas, 530; Blum v. Schwartz, 20 S. W., 55-56; Stephens v. Keating, 17 S. W., 37; Russell v. Nall, 2 Texas Civ. App., 60, 23 S. W., 901; Wiggins v. Sprague, 15 Texas Civ. App., 590, 40 S. W., 1021.    On constructive notice by registration, see:    Taylor v. Harrison, 47 Texas, 457; McLouth v. Hurt, 51 Texas, 119.

Mr. Justice YANTIS delivered the opinion of the court.

The trial was in the District Court before the judge without a jury. A judgment was rendered in favor of T. K. Jones, the plaintiff there, and defendant in error here.    A judgment was rendered in his favor in the District Court foreclosing his judgment lien on the land of W. S. Roberts, one of the defendants, giving priority to his lien over the deed of trust lien held by the First State Bank of Amarillo, one of the defendants in said suit, and plaintiff in error in this court.    Judgment was also given in favor of the bank against Roberts for its debt and a foreclosure of its lien, but giving priority to the Jones' judgment lien. The bank alone appealed to the honorable Court of Civil Appeals for the Second District, in which court the judgment of the District Court was affirmed.    The bank presented in this court its petition for writ of error. Jones, the defendant in error, filed an answer thereto, which rendered the case subject to immediate disposition.

We take the following statement of the case from the opinion of the honorable Court of Civil Appeals, which presents the issues to be considered:

"T. K. Jones instituted this suit against W. S. Roberts and the First State Bank of Amarillo to foreclose an alleged judgment lien upon land situated in Clay County, consisting of two lots in the town of Henrietta and a tract of one hundred and three and two-tenths acres. Plaintiff alleged in his petition that the bank was asserting some claim to the property and prayed that the judgment lien sought to be foreclosed be established as superior to any claim asserted by the bank. From a judgment in favor of the plaintiff, granting the relief prayed for, the defendant bank alone has appealed.

"On the original hearing the judgment was reversed and judgment was here rendered in favor of the bank, but upon a motion for rehearing by appellee Jones the judgment was affirmed.    Appellant has now moved for a rehearing, and in order to set out more fully and more accurately the facts shown in the record, both original opinions are withdrawn and this is filed as a substitute therefor.

"The judgment upon which the alleged lien was predicated was rendered in favor of Jones against Roberts on October 8, 1912, and an abstract of same was filed in Clay County on October 9, 1912.

"The evidence shows that plaintiff's judgment against Roberts was rendered for twelve thousand nine hundred and eighty-six dollars and seventy-four cents, and as so rendered it was abstracted. Three days after the rendition of the judgment a remittitur of eight hundred and sixty dollars and forty-eight cents was filed by the plaintiff in the judgment reciting that to that extent the judgment was excessive and that the error was due to a mistake in calculation of the amount due upon the promissory notes which formed the basis of that suit.

"The controversy between Jones and the bank in this suit is a question of priority of liens, the bank claiming a lien upon the land in controversy superior to that of the judgment lien. The following evidence appears in the statement of facts:

"On December 21, 1911, Roberts executed a deed of trust upon the property in controversy and another tract of land consisting of fifty acres also situated in Clay County to secure the bank in the payment of a promissory note for the principal sum of five thousand, five hundred dollars, dated December 1, 1911, and due twenty days after date with ten per cent interest and ten per cent attorney's fees. This deed of trust was duly filed for record in Clay County on December 22, 1911. On April 18, 1912, the bank, acting through its president, Mike C. Le-Master, executed a release in words and figures as follows:

" 'State of Texas,
County of Potter.    Know All Men By These Presents:

" 'Whereas, on the 1st day of December, 1911, W. S. Roberts of Potter County, Texas, did execute, acknowledge and deliver to Mike C. Le-Master, trustee, for benefit of First State Bank, Amarillo, of Potter County, Texas, a certain deed of trust on the following described real estate, situated lying and being in the County of Clay in said State of Texas, which deed of trust is recorded in book 17, page 253, Mortgage Records of Clay County, Texas, to-wit: a certain fifty acres of land, which is described by metes and bounds in the above mentioned deed of trust, and being part of a certain deed recorded in book 49, page 18, Deed Records of Clay County, Texas, and specifically described in a deed, dated Amarillo, Texas, dated April 17, 1912, executed by W. R. Roberts to E. C. Carter, to secure the prompt payment of one certain promissory note executed by the said W. S. Roberts and payable to the order of First State Bank, Amarillo, Texas, as follows: One note of fifty-five hundred dollars, due March 1, 1912, and bearing interest from maturity at the rate of ten per cent per annum; and

" 'Whereas, said note with accrued interest has been fully paid, and at the time of such payment said note was the property of First State Bank, Amarillo, Texas:

" 'Now, therefore, know all men by these presents, that I, Mike C. LeMaster, president of First State Bank, Amarillo, Potter County, Texas, in consideration of the premises and of the full and final payment of said note, the receipt of which is hereby acknowledged, have

this day and do by these premises, remise, release and quit claim unto the said W. S. Roberts, his heirs and assigns, the lien heretofore existing on said premises by virtue of said deed of trust, and do hereby declare the same fully released and satisfied.'

"That release was properly filed for record in Clay County on May 27, 1912. On October 15, 1912, W. S. Roberts executed another deed of trust to Mike C. LeMaster, trustee, for the First State Bank of Amarillo, which was filed for record in Clay County October 17, 1912, and duly recorded in Deed of Trust Records of that county, upon all the land described in the original deed of trust, except that described in the release, which recited the execution and record of the deed of trust dated December 21, 1911, also the execution and record of the release of date April 18, 1912, from the First State Bank of Amarillo to W. S. Roberts, stating, in substance, that said release was intended only to release the two tracts of land therein described and referred to containing one five acre tract and one fifty acre tract, two of the tracts described in the deed of trust of date December 21, 1911; that the execution of said release was in consideration only of the payment of the sum of nine hundred dollars and not the whole indebtedness secured by the deed of trust; that it was the intention of all the parties to the instrument that the release should be made to said fifty-five acres only and no more and that the recital in the release of the full payment of the fifty-five hundred dollar note was a mistake made through inadvertence on the part of the person who prepared the release and on the part of Mike C. LeMaster, president of the bank. This instrument further stipulated that it was given to secure the payment of the balance due the bank evidenced by a note for four thousand seven hundred and ninety-eight dollars and eighty-five cents, dated September 9, 1912, due November 1, 1912, with ten per cent interest from maturity and ten per cent attorney's fees; that said note was in renewal of said original indebtedness of fifty-five hundred dollars secured by the first deed of trust, and that the deed of trust then being executed was given to continue in full force and effect the original deed of trust executed by Roberts and mentioned above.

"The defendant also introduced in evidence the following promissory notes all executed by W. S. Roberts, payable to the order of the First State Bank of Amarillo; the first for the principal sum of fifty-five hundred dollars dated December 1, 1911, due ninety days after date; the second for the principal sum of four thousand seven hundred and ninety-eight dollars and eighty-five cents, dated September 6, 1912, due November 1, 1912; the third for the principal sum of five thousand two hundred and fifty-three dollars and fifty-nine cents, dated August 8, 1913, due October 1, 1913. It does not appear from the statement of facts that either the second or third note purports upon its face to be a renewal of any other note. Mike C. LeMaster testified upon the trial as follows:

" 'I was president of the First State Bank of Amarillo during the

latter part of 1911, the year of 1912 and the first half of 1913, and was president of said bank on the 18th day of April, 1912. I am now familiar with the release executed by me as president of said bank to W. S. Roberts, dated April 18, 1912, recorded in volume 67, page 512, Deed of Trust Records of Clay County, Texas, but was not familiar with the contents thereof at the time of its execution. The statement in said release to the effect that the note for $5500, secured in the deed of trust of December 21, 1911, recorded in volume 17, page 253, Deed of Trust Records of Clay County, Texas, made by W. S. Roberts to me as trustee for First State Bank of Amarillo, is not true. The note mentioned has never been paid, except in part. There was paid on it $900 about the time of the execution of said release. An error of the stenographer in failing to cancel a portion of the printed form of said release, which was overlooked by myself when signing such release, accounts for the mistake in said release. My intention was to release certain lands, about 55 acres, described in a certain deed from W. S. Roberts to E. C. Carter, dated the 17th day of April, 1912, and now of record in the Deed Records of Clay County, Texas, in volume 66, page 110, and it was not my intention to release all the property covered by said deed of trust, dated December 21, 1911, of record in the Deed of Trust Records of Clay County, Texas, in volume 17, page 253. Nine hundred dollars was paid about the time of the execution of said release. There remains now $5253.59 principal and interest due First State Bank of Amarillo on said note. I am not now employed in any capacity by the First State Bank of Amarillo. The first time that I learned that the release did not set forth the facts was about the 15th day of October, 1912. It was discovered when Mr. Roberts offered to deed us the property in settlement of his debt to us, at which time we sent our attorney, Mr. Thos. F. Turner, to Henrietta to look into the title of this property, and he discovered the error at that time, and instructed us to have a corrected deed of trust executed, which we did, and the same is filed in the Deed of Trust Records of Clay County, Texas, and recorded in volume 17, pages 429-430.'

"Defendant W. S. Roberts testified as follows:

" 'I signed the deed of trust dated December 21, 1911, to secure the payment of a note for $5500 described in said deed of trust. There has never been paid on said note except about $900, at the time I sold the land to E. C. Carter described in my deed to him, dated April 17, 1912, which has already been introduced in evidence, and I have paid in addition thereto some small payments of interest so that there is now due on said original indebtedness the principal sum of $5253.59, evidenced by the note made by me to said bank and already introduced in evidence. That note was but a continuation of the old indebtedness secured by said original deed of trust, and I executed and delivered to said bank from time to time renewal notes, so that this last note for $5253.59 is a continuation of an unbroken chain of notes given by me for said indebtedness.

" 'When I sold the land to E. C. Carter it was necessary for me to get a release of the 55 acres I was selling to him in order to make him a good title, and I agreed with the bank that I would pay $900 out of the money received from him and the sale of the note I got from him if the bank would release these two tracts of land. I got a cash payment of $500 from Mr. Carter and sold the notes he gave me and paid the bank $900 as soon as I sold the notes. The bank executed a release, but I never did see this release. I think it was sent to a bank at Henrietta along with my deed to Mr. Carter to be delivered to Mr. Carter. I did not intend for the bank to release anything but the 55 acres nor did I ever know that the release recited that the whole $5500 note had been paid until about the time I executed the second deed of trust on October 15, 1912. Mr. LeMaster told me that there was some mistake in the release which he desired to have corrected, and I then executed the second deed of trust dated October 15, 1912, in order to correct the mistake in the release wherein it was recited that the whole of the note had been paid. At the time the plaintiff's abstract of judgment was filed in Clay County I owed the First State Bank of Amarillo a note for $4798.85, dated September 6, 1912, due November 1, 1912, and it was secured by said original deed of trust of December 21, 1911, and was a continuation of the original indebtedness secured by said original deed of trust, after deducting the $900 which I had paid. This last note being the amount due with whatever interest I owed the bank. It was understood between me and the bank all the time, of course, that these renewal notes were secured by said original deed of trust.'

"There was no evidence showing the particular items and dates of the several interest payments testified to by Roberts. Plaintiff introduced no witness to contradict the testimony of Mike C. LeMaster and Roberts. The two deeds of trust, the three promissory notes and the release set out above were all specially pleaded by the two defendants, who further pleaded that only nine hundred dollars was paid to the bank by Roberts at the time the release was executed and that the recitals contained in the release of full payment of the original debt were inserted by mutual mistake of the parties to that instrument. .

From the facts recited above, it will be noted that the renewal deed of trust was filed for record six days subsequent to the record of the abstract of judgment under which plaintiff claimed a lien."

The judgment lien of Jones would only fasten upon the interest in the land which was actually owned by Roberts. It would not attach to a greater interest therein than Roberts owned in the land, even though the deed records erroneously disclosed in his favor a greater interest in the land than belonged to him. A judgment lien holder is not in the same attitude as an innocent purchaser for value without notice. The latter has expended his money in good faith to the amount of the purchase price of the land, and is justly entitled to be held harmless. It is right that the loss under such circumstances should be visited upon the land owners whose negligence, in failing to give notice through the

deed records of his ownership, occasioned the loss, rather than that it should fall upon the innocent purchaser who was without fault. The judgment lien holder is in a different attitude. He is not in any sense an innocent purchaser. If his lien fails to attach he loses nothing. His judgment still remains unimpaired in its full amount. In such a case, even though the owner of the land has been negligent in failing to provide a correct record notice of his title, still his negligence has not resulted in injury to the judgment creditor. Under such circumstances there can be no good reason for any other rule, than that his lien attaches to no more than the interest actually owned in the land by the judgment debtor. This was the common law rule, and it has been consistently followed by this court. If the recital of full payment of the note held by the bank against Roberts was occasioned by a mutual mistake, its correction was an equitable right to which the bank was entitled. This equitable right was not controlled by our registration laws, but was superior thereto. Grace v. Wade, 45 Texas, 522; Blankenship v. Douglas, 26 Texas, 226, 82 Am. Dec., 608; Hill v. Moore, 62 Texas, 610; Hawkins v. Willard, 38 S. W., 365; Henderson v. Rushing, 47 Texas Civ. App., 485, 105 S. W., 840.

If the recital in the release which was executed by the bank, through its president, to the effect that the Roberts' note which had been secured by deed of trust in the bank's favor had been paid in full, was in fact a mistake, and the note had not been paid in full, then the bank should not and would not lose its lien by reason thereof. In such circumstances equity would reform the release so as to correct the mistake and speak the truth. On the issue of mistake, the evidence is uncontradicted that the recital of full payment was a mistake, and that the note had not been paid except in part. The bank's president so testified, and Roberts, whose debt it was, so testified. No person testified to the contrary. No one testified to the existence of any circumstance tending to show that it was not a mistake. There was no evidence of collusion between the bank and Roberts. The only circumstance which could be in any way relied upon as disproving the mistake, is the recital of full payment in the instrument itself. The judgment of the trial court rests alone upon this circumstance. This recital standing alone as the only impeachment of the testimony of the president of the bank, and of Roberts, has little probative force, when considered in connection with the other recitals contained in the release and in the deed of trust, which was made a part of it by reference to it in the release. It does not amount to "any evidence" even when excluding from consideration the clear and convincing evidence presented in the record to the effect that the note had not been paid, and that the recital to that effect was an error. Especially is this true when the release is considered in its entirety. Upon its face, when considered in connection with the original deed of trust referred to in the release, the recital of full payment is contradicted by the circumstance that the written release does not release all the security which the bank held to secure the

payment of said note. It only releases a fifty acre tract of land from said mortgage, and fails to release the other land described therein, consisting of a tract of one hundred and one-third acres; another of five acres; also lots four and five in block seven, Henrietta, which lots were covered by a one-story brick building of "three twenty-foot rooms." Any one reading the release and the deed of trust would not necessarily conclude therefrom that the note had been paid in full. He might surmise that it had been paid in full, but he could do no more, for it would be apparent that a mistake had been made, either in stating that the note had been paid in full, or in retaining a mortgage on the greater portion of the bank's security. If it was paid in full, why did the bank not release all of the land instead of only one small tract of the land? No other reason would suggest itself than that the mortgage was retained on the balance of the land to secure the payment of some of the unpaid portion of said note. Under such circumstances even a person claiming as an innocent purchaser would fail in his plea, since a mistake in the release is apparent on its face when read in connection with the deed of trust. After reading the release and the deed of trust the duty would then devolve upon him to prosecute an inquiry as to the nature of the mistake. The prosecution of this inquiry would lead him directly to Roberts, whose debt was involved, and to the president of the bank, who executed the release. From them · he would learn that the mistake was in reciting full payment of the note. This would defeat his plea. The recital of full payment was a circumstance in the nature of a declaration against interest, it is true, but its probative force is greatly impaired when considered in the light of the circumstance that the bank failed to release its mortgage on the other tracts of land contained in the deed of trust. We do not think this recital in the release when so considered amounts to more than a scintilla of evidence; a surmise or suspicion; its probative force is so weak as that it should be considered as not any evidence in contradiction of the otherwise undisputed evidence to the effect that the note had only been paid in part. When the evidence has no greater force than this the law does not sanction a judgment based thereon. Joske v. Irvine, 91 Texas, 574, 44 S. W., 1059; Texas Loan Agency v. Fleming, 92 Texas, 458, 49 S. W., 1039, 44 L. R. A., 279; Radley v. Knepfly, 104 Texas, 134, 105 S. W., 111; Cobb v. Bryan, 37 Texas Civ. App., 339, 83 S. W., 888.

In the case of Joske v. Irvine, supra, the Supreme Court, speaking through Mr. Justice Denman, and addressing itself to the value of evidence having little probative force, said:

"From a careful examination of the cases it appears (1) that it is the duty of the court to instruct a verdict, though there be slight testimony, if its probative force be so weak that it only raises a mere surmise or suspicion of the existence of the fact sought to be established— such testimony in legal contemplation falling short of being 'any evidence,' and (2) that it is the duty of the court to determine whether the testimony has more than that degree of probative force.

"If it so determines the law presumes that the jury could not 'reasonably infer the existence of the alleged fact' and 'that there is no room for ordinary minds to differ as to the conclusion to be drawn from it.' The broad and wise policy of the law, formed in and descending to us through the crucibles of time, does not permit the citizen to be deprived of his property, his liberty or his life upon mere surmise or suspicion, and places upon a trained judiciary the grave responsibility of determining, as a question of law whether the testimony establishes more."

We conclude that the uncontradicted evidence shows that the recital of full payment in the release was a mistake, and that the $5500 note, with interest, had not been paid in full, but that there had been paid upon it only the sum of $900. It is, therefore, our opinion that the Court of Civil Appeals erred in affirming the judgment of the District Court, and in thereby giving priority to Jones' judgment lien over the mortgage lien held by the bank. The judgment of said court, and of the District Court, will, therefore, be reversed and the judgment here reformed in favor of the plaintiff in error, the First State Bank of Amarillo, against W. S. Roberts, so as to give it a foreclosure of its said mortgage lien on the property described in the deed of trust, as a prior and superior lien to the judgment lien of Jones, the defendant in error, whose judgment against W. S. Roberts will be undisturbed except that the foreclosure of his lien shall remain in effect, subordinate to the mortgage lien of the bank, and the judgment of the District Court in favor of the bank against Roberts will be otherwise undisturbed.

### DISSENTING OPINION.

MR. JUSTICE HAWKINS delivered the following dissenting opinion:

The trial court and the Court of Civil Appeals having found and held, upon the evidence, that the note had been fully paid, and the legal effect of such payment being to relieve and release, in fact, all the land described in the deed of trust from the lien thereby created, there is presented, in this court, the naked question as to whether there is, in the record, any evidence of probative force in support of that finding of fact. If that question should be answered affirmatively the judgments of both lower courts properly disposed of this case.

With the weight of conflicting evidence upon an issue of fact this court is not concerned, that entire matter lying wholly outside of its jurisdiction. Const., art. 5, sec. 3; Rev. Stats., art. 1521; Warren v. City of Denison, 89 Texas, 557, 36 S. W., 404; Mutual Life Ins. Co. v. Hayward, 88 Texas, 315, 30 S. W., 1049; Clarendon Ld. Inv. Agency Co. v. McClelland, 86 Texas, 187, 22 L. R. A., 105, 23 S. W., 526; Texas & P. Ry. Co. v. Levine, 87 Texas, 437, 29 S. W., 466; Texas & N. O. Ry. Co. v. Echols, 87 Texas, 339, 27 S. W., 60, 28 S. W., 517; Gulf, C. & S. F. Ry. Co. v. Cannon, 88 Texas, 312, 31 S. W., 498; Hunter v. Eastham, 95 Texas, 648, 69 S. W., 66; Schley v. Blum, 85 Texas, 551, 22 S. W., 667. In Railway Co. v. Levine, *supra,* this court said: "It

is not within the power of this court to determine the issue made by the evidence; it is a question of fact, and no matter how overwhelming the rebutting evidence may be, the Constitution and laws of the State have denied jurisdiction to this court." Indeed, that much is conceded, in effect, by the majority opinion in this case.

Inherently, and under the settled practice in this court, the only fair and adequate test in the premises which *this court* can apply is to disregard all contradictory evidence and to consider, by itself alone, the testimony tending to prove that the note had been paid in full.

In Wininger v. Fort Worth & D. C. Ry. Co., 105 Texas, 56, 143 S. W., 1150, this court, through Chief Justice Brown, said:

"The honorable Court of Civil Appeals had authority to reverse the judgment of the trial court on the preponderance of the evidence, but it could not render the judgment, if, discarding all adverse evidence and giving credit to all evidence favorable to the plaintiff and indulging every legitimate conclusion favorable to the plaintiff which might have been drawn from the facts proved, a jury might have found in favor of the plaintiff."

And in Cartwright v. Canode, 106 Texas, 507, 171 S. W., 696, this court likewise said:

"In passing upon this question, we must reject all evidence favorable to the plaintiffs in error, and consider only the facts and circumstances which tend to sustain the verdict, and if the jury in an honest and impartial effort to arrive at the truth might have reached the conclusion embodied in this verdict, this court can not set it aside. . . . This court must pass upon that issue as if the evidence favorable to the defendants had not been before the jury. The facts are of such nature that one reading the record might not get their full force as would one seeing and hearing the witnesses."

This rule applies whether the trial was before a jury or not.

Eliminating, then, the testimony of the president of the bank, which was both payee and owner of the note, and also the testimony of its maker, to the effect that it had not been fully paid and that the recitals in the release to the effect that the note had been fully discharged are simply erroneous, we face the foregoing question concerning the probative force of said release as a whole.

In support of the judgment of the trial court, all reasonable presumptions must be indulged; wherefore this court must presume that the trial court found and held that the note described in and secured by said deed of trust had been fully paid off and satisfied.

In my opinion, the oft-repeated recitals in the release to the effect that the entire debt, principal and interest, secured by the original deed of trust had been fully paid off and satisfied were amply sufficient, in and of themselves, and without regard to any or all other testimony in the case, written or oral, to support such finding of fact and the judgments of the lower courts, and that effect of said recitals is heightened and strengthened by the declarations, in the same instrument, that the

lien theretofore existing by virtue of said deed of trust was being fully released and satisfied; wherefore I think the judgment of the lower courts should be affirmed.

That my conclusion is sound and unanswerable seems obvious; but, in deference to the views expressed by the majority, and their action in reversing and rendering, I will indicate the course of reasoning by which my conclusion has been reached.

The record before us shows that the release was signed by the bank, acting through its president, and acknowledged by him in that capacity. Throughout this case it has been treated as the act and deed of the bank, and I will so treat it. Muller v. Boone, 63 Texas, 91; Ballard v. Carmichael, 83 Texas, 368, 18 S. W., 734.

In determining the probative force and legal effect of said release, as it stood in evidence, it is necessary, first, to ascertain the meaning and import of its language.

The declaration therein that "said note with accrued interest has been fully paid" is unequivocal and definite. Following the recital, and referring to the book and page of the county records upon which the deed of trust securing it had been recorded, said release declared that it was executed "in consideration of the premises and of the full and final payment of said note, the receipt of which is hereby acknowledged."

Unquestionably, payment of an entire debt extinguishes, *ipso facto,* any and all liens securing it. Consequently, and necessarily, the fair and legal effect of said recitals, upon the face of the instrument, was to release all of the land described in said deed of trust from the lien thereby created. To effectually accomplish that result no declaration of purpose or consequence was necessary.

However, said recitals were followed by the operative words "do by these presents, remise, release and quit claim unto the said W. S. Roberts, his heirs and assigns, the lien heretofore existing on said premises by virtue of said deed of trust, and do hereby declare the same fully released and satisfied." It will be observed that the release does not, as is usual in merely partial releases of liens, declare that a certain defined portion of the land covered by the lien is released from its operation and effect, coupling with such declaration a statement that the lien shown by the deed of trust is expressly retained and continued in force to secure the unpaid portion of the debt.

It is true that the words "said premises" there relate to and mean only said "fifty acres," but that which is declared released is not said fifty acres, or any other land, but "the lien," the words "heretofore existing on said premises by virtue of said deed of trust" being descriptive merely, and serving no purpose whatever except to identify the lien which was being released. It is but natural and reasonable to presume, or infer, from the instrument as a whole, that if its purpose had been to restrict its operation apter words to express that purpose and legal effect would have been employed. The words "remise, release and quit-claim" are not inapplicable to a "lien," while the words "do declare the same

fully released and satisfied" are plainly inapplicable, or, at least, inappropriate, in referring to the "fifty acres," or to any land. It would be absurd to declare any land fully "satisfied;" but it is entirely natural, customary and proper to declare a lien "fully released and satisfied," and I think that was done by said release.

Any other view of the matter appears to me to be purely fanciful and entirely too transcendental to control the practical affairs of mortals who are accustomed to rely and act upon statements, whether oral or written, upon the assumption that words embodied therein are used in their ordinary sense. In that sense the operative words of this release certainly mean that the entire lien on all the land described in the deed of trust is being fully and finally discharged. That interpretation of said operative clause is supported and even rendered actually necessary by the preceding reiterated recital of full payment of the note, with interest. Moreover, the fundamental, elementary and established rule for the construction of deeds and like instruments affecting title to land is that they are to be construed most strongly against the grantor.

The majority opinion, in several passages, treats the instrument in question as not releasing all the security; as releasing only fifty acres; as failing to release the other land; as not necessarily implying that the note had been paid in full; as suggesting that a mistake had been made, "either in stating that the note had been paid in full, or in retaining a mortgage on the greater portion of the bank's security"; as showing that "the bank did not release all of the land"; and holds, in substance, that the only reasonable explanation of what it thus assumes to be contradictory statements in the release is "that the mortgage was retained on the balance of the land to secure the payment of some of the unpaid portion of said note." Respectfully, yet emphatically, I must say that I regard all that as but the sheerest assumptions. In said release as a whole I am utterly unable to find any contradictory expressions whatever. And even if the operative clause could be construed as expressly releasing only the fifty acres, it would not imply that the lien was to be retained on the residue of the land, and that clause, therefore, would not, in any wise, conflict with the recitals that the note had been paid in full. Certainly between those recitals and an operative clause expressly declaring that all of the land was being released from that lien there would be no sort or shade of conflict whatever; and for the same reason there can be no inconsistency between those recitals and the operative clause which expressly released only a described portion of the land from that lien, and did not, expressly, or by necessary implication, retain such lien upon the residue of the land or any part thereof.

But, even if it be conceded, for the sake of the argument, that the latter portion of said release impliedly purports to retain and preserve said deed of trust lien upon all the land except the fifty acres tract, yea, even if it expressly so declared, that would introduce into the release an element of inconsistency which I am unable to find in it, but such inconsistency, while it might detract somewhat from the probative force

of the release as a whole, certainly would not wholly destroy or neutralize the natural and legal force and effect of said reiterated declarations therein that the entire deed of trust debt had been fully paid off and satisfied; and, even in that condition, the release, as a whole, would sup-port the finding that said recitals of full payment silently spoke the truth. The trial court, like a jury, has a right to believe one witness, even though he contradicts himself, rather than two or more witnesses who testify to the contrary without crossing themselves, or each other, and that principle applies to such documentary evidence as said release and the contradicting oral testimony of the two living witnesses. Under such circumstances the most that can be said, justly, is that the evidence would support a judgment either way, and that, if not satisfied there-with, the Court of Civil Appeals might properly reverse and remand, but even that much this court could not properly do.

To illustrate the meaning and legal effect of said release, let us sup-pose that in an action by the bank against the maker of the note for debt and foreclosure of its deed of trust lien the bank should introduce in evidence only said note and deed of trust, and that the maker of the note should introduce in evidence only said release, and that, on such evidence alone, a jury or the trial court should find for the defendant, and that judgment should be entered accordingly; under such circum-stances, could it justly be said that such judgment was without evidence to support it? Clearly not, it seems to me, and I apprehend that, in such case, this court would not disturb such judgment; yet, logically, that very result would follow from an application therein of the reason-ing set forth in the controlling opinion in this case.

Clearly, I think, the phraseology of said release is such as to protect, to the fullest extent, against said deed of trust lien, an innocent pur-chaser for value, in reliance thereon, of all or any portion of the land embraced by said deed of trust. In such a case, under our registration laws, both the payee and the maker of the note would be bound by the recitals and terms of the instrument of record and neither would be heard to contradict them; and, especially if the release were the only evidence relating to payment of the note, it would be not only the right, but the duty of the trial court, to charge the jury, peremptorily, that to the extent necessary for the protection of such innocent purchaser, it must be considered that the note had been fully paid and that the en-tire lien securing its payment had been fully extinguished and finally released of record. In the case at bar the party relying upon said re-lease, being merely a judgment creditor, is not so favored by our registra-tion laws, and is relegated, for the satisfaction of his judgment lien, to what the judgment debtor actually owns in the land covered by the deed of trust; but, in determining the character and extent of that in-terest, as a matter of fact in contradistinction to a matter apparent upon the mortgage record, the rules for the construction and interpretation of the release are identical in the two cases. It is a matter of common knowledge that in thousands of instances, and all over Texas, titles to

land rest upon just such releases, which, customarily, are considered good and sufficient to release all the land from all the lien, and I can see no good reason whatever for disturbing them.

I can find no avenue of escape from the conclusion that the fair intent and purpose of the release, as disclosed by its terms and provisions, and apparent upon its face, if it states the facts, though but mutely, was to release the entire lien created by said deed of trust, and not merely to release from the operation of that lien the fifty acre tract, the sale of which constituted the immediate occasion for obtaining the release; and such, necessarily, is its legal effect, in the absence of contradictory evidence, from which standpoint, alone, as we have seen, this court must view the item of evidence consisting of the release itself.

Such being the purpose and legal effect of the release upon its face, was it permissible for the trial court to disbelieve and disregard the contradictory oral testimony? I think it was.

Said release was a formal document, solemnly executed by the chief executive officer of the payee bank for record. Presumably it was executed upon due deliberation and with proper care. Aside from that it was entitled to due consideration as a mere receipt in full. Between the inaudible yet cogent evidence presented by the release and said oral testimony there was what the trial court might reasonably consider a sharp and irreconcilable conflict upon the issue of full payment of said mortgage debt, which issue resolved itself into the question whether the statement by the bank, set out in said release, or the oral testimony of its officer, reflected the actual facts involved. Manifestly they were inconsistent. To settle and determine just such conflicts in evidence, in the light of all the facts and circumstances of the case, including the demeanor and appearance of the witnesses, is the peculiar province and function of the trial court. That court evidently rejected said oral testimony and found and held that the release spoke the truth. If it did the note had been fully paid, the lien which had secured it no longer existed, and the judgment lien had become a first lien upon all the unsold land.

For the reasons stated, I think that the judgments in this cause accordingly should be affirmed.

*Reversed and Remanded.*