Thomas P. MARTIN and Dolly M. Martin as Trustees for The Thomas P. Martin and Dolly M. Martin Revocable Living Trust and The Chase Manhattan Bank f/k/a Chase Bank of Ohio, and Dunfries Corporation, An Affiliate of The Chase Manhattan Bank, Appellants,

v.

The CADLE COMPANY, Appellee.

No. 05–03–00356–CV.

Court of Appeals of Texas, Dallas.

May 19, 2004.

Alan S. Trust, Trust Law Firm, P.C., J. Allen Smith, Cliff Wade, Settle & Pou, P.C., Perry J. Cockerell, R. Douglas Scott, Stephen C. Reid, III, Randall K. Price, Cantey & Hanger, L.L.P., Dallas, Stephen L. Tatum, Cantey & Hanger, L.L.P., Fort Worth, for Appellant.

John Mccasland Clement, Beverly A. Whitley, Bell, Nunnally & Martin, PLLC, Dallas, for Appellee.

Before Justices MORRIS, WRIGHT, and RICHTER.

### OPINION

Opinion by Justice MORRIS.

This is an appeal from a lawsuit brought to establish the priority of certain judgment liens and for the foreclosure of those liens on property purchased by Thomas P. Martin and Dolly M. Martin as trustees for the Thomas P. Martin and Dolly M.

Martin revocable living trust. The Martins contend the trial court erred in concluding the judgment liens held by the Cadle Company, the Chase Manhattan Bank f/k/a Chase Bank of Ohio, and Dunfries Corporation, an affiliate of the Chase Manhattan Bank, were superior to all other liens on the property and in allowing Cadle and Chase to foreclose on the liens. Chase also appeals the trial court's judgment claiming the trial court erred in failing to order that the separate liens held by Cadle and Chase should be satisfied on a pro rata basis. Chase further claims the trial court erred in awarding Cadle attorney's fees and expenses against it.

After reviewing the record, we conclude the trial court correctly held that Cadle's and Chase's judgment liens are superior to all other liens on the property and that Cadle and Chase are entitled to foreclose on the property. We further conclude, however, the trial court erred in not applying the proceeds from the foreclosure sale on a pro rata basis to satisfy Cadle's and Chase's judgment liens. Accordingly, we affirm the trial court's judgment in part, reverse the judgment in part, and render judgment that the proceeds from the foreclosure sale be applied to the judgment liens on a pro rata basis.

## I.

The judgment liens at issue in this case arose out of several judgments rendered against Jack E. Pratt, Jr. The first judgment was obtained by MBank Dallas, N.A. on April 3, 1989. An abstract of judgment was filed in the Dallas County real property records on May 31, 1989. The judgment and lien were eventually assigned to Cadle, which renewed the abstract of the judgment on February 4, 1999.

The second judgment against Pratt was rendered in favor of Chase on October 17, 1990 in an Ohio state court. Chase filed a Notice of Filing of Foreign Judgment in a Dallas County district court on May 9, 1991 and recorded an abstract of the Ohio judgment in Dallas County on January 27, 1992. Chase then obtained an agreed judgment against Pratt in a different Dallas County district court on November 18, 1991, which had the effect of making the Ohio judgment an enforceable Texas judgment. Chase recorded an abstract of this judgment on October 11, 1994.

The last judgment at issue was obtained by American Federal Bank, F.S.B. on October 15, 1992. An abstract of judgment was filed in Dallas County on December 23, 1992. This judgment and lien were also assigned to Cadle.

After the judgments were rendered, Pratt and his father, Jack E. Pratt, Sr., purchased certain real property located on Northaven Road in Dallas County. Each acquired an undivided one-half interest in the property. The Pratts purchased the property subject to a note dated August 1, 1994 owned by Equitable Bank. On August 19, 1994, a general warranty deed for the property with a vendor's lien in favor of Equitable Bank was recorded in the Dallas County real property records. It is undisputed that the judgment liens held by Cadle and Chase attached to the Northaven property as junior liens.

The record before us shows that on May 7, 1997 Compass Bank, formerly Equitable Bank, executed a release of lien on the Northaven property that stated the "holder of the note acknowledges its full payment." This release was recorded on May 19. Approximately two weeks later, however, a Notice of Substitute Trustee's Sale was issued listing Evelyn Johnstone as the holder of the August 1, 1994 note and deed of trust. The notice further stated there

was a default in performance of the obligations of the deed of trust and the Northaven property would be sold at public auction on July 1, 1997 to satisfy the debt. Pratt Sr. attended the auction and purchased the property. A Substitute Trustee's Deed was signed the same day conveying the property to him.

On July 9, 1997, approximately one week after the foreclosure sale, Compass Bank executed a Transfer of Lien ostensibly transferring to Evelyn Johnstone the originally released August 1, 1994 note and lien on the Northaven property that were the basis of the foreclosure. The document states "[t]his Transfer of Lien is given in lieu and substitution of the Release of Lien executed by Compass Bank, dated May 7, 1997. . . ." On July 14, 1997, Pratt Sr. sold the Northaven property to the Martins. Two and one-half years later, the Martins transferred the property into a revocable living trust.

On December 19, 2001, Cadle filed suit against the Martins seeking a declaratory judgment that its judgment liens were valid, subsisting, and superior to all other liens against the property. Cadle further sought foreclosure of its two judgment liens. The Martins responded asserting various affirmative defenses including three and four-year statutes of limitations. The Martins also filed a counterclaim for a declaratory judgment to remove the cloud from their title to the property. Chase filed a plea in intervention seeking a declaratory judgment regarding the superiority of its two liens and also sought foreclosure.

On August 13, 2002, Cadle filed a motion for summary judgment arguing that its liens became the superior liens on the Northaven property when the bank released its lien on May 7, 1997. According

to Cadle, its judgment liens remained attached to the property throughout the later transfers or attempted transfers of ownership and Cadle had a right to foreclose on the property to satisfy the liens. Chase also moved for summary judgment arguing that its judgment liens attached to the Northaven property simultaneously with Cadle's liens and that all the liens should be satisfied pro rata from the proceeds of the foreclosure.

The Martins filed a response and a cross-motion for summary judgment arguing that the May 7, 1994 release of lien recorded on May 19 was a mistake and was corrected by the July 9, 1997 "transfer of lien" to Evelyn Johnstone. According to the Martins, Johnstone's July 1, 1997 foreclosure on the property cut off Cadle's and Chase's judgment liens and clear title passed to Pratt Sr. and, subsequently, to the Martins. They further argued that even if they did not have clear legal title, foreclosure of the judgment liens on the Northaven property was barred by the statute of limitations.

Following a hearing, the trial court granted Cadle's motion for summary judgment and denied both Chase's and the Martins' motions. The trial court held that both of Cadle's judgment liens and Chase's first judgment lien were valid and subsisting and were superior to all other liens on the Northaven property. The court further held, however, that the abstract of Chase's second judgment filed on October 11, 1994, failed to comply with statutory requirements and did not, therefore, give rise to a valid judgment lien.

Because Pratt had only an undivided one-half interest in the property, and the property was not susceptible to partition, the trial court ordered the property sold and one-half of the proceeds be used to

satisfy the three valid judgment liens. The court further held that the liens were to be satisfied in order of their priority and that Cadle's first judgment lien was first in priority with Chase's judgment lien and Cadle's second judgment lien second and third in priority respectively. Finally, the court ordered that Cadle recover attorneys' fees and expenses from both Chase and the Martins. Both Chase and the Martins appealed.[1]

## II.

The central issue we must decide is what effect, if any, the bank's purported transfer of lien had on its earlier release of lien. The Martins contend the bank had an absolute right to correct its "mistaken" release of lien and, at the very least, the summary judgment evidence, including the transfer of lien, created a fact issue about the validity of the release. Cadle responds that when the bank released its lien on the property, the judgment liens became superior to all other liens and neither the bank's later transfer of the released lien nor the purported foreclosure of the lien by Johnstone affected the superior status of the judgment liens.

■ The Martins rely on the Texas Supreme Court's opinion in *First State Bank of Amarillo v. Jones*, to support their contention that the bank had a right to rescind its release of lien and replace it with a transfer of lien. *See First State Bank of Amarillo v. Jones*, 183 S.W. 874, 107 Tex. 623 (Tex.1916). In *Jones*, the court held that if a release of lien was occasioned by a mutual mistake, the lien holder has an equitable right to its correction. *Id.* at

876. It is clear, therefore, that an erroneous release of lien can be corrected. It is also clear in this case, however, that the bank never legally effected such a correction nor was an equitable right to a correction shown.

The bank in *Jones* held a note and had a lien on property owned by W.S. Roberts to secure payment of the note. Roberts wished to sell a portion of the property covered by the deed of trust to a third person and arranged with the bank to pay off part of the note and have the lien released with respect to the portion of land he wanted to sell. The bank executed a release of lien, specifying the portion of the property to which the release applied. Rather than stating that only part of the debt had been paid, however, the note mistakenly recited the note was paid in full. Several months later, the mistake was discovered, and the bank and Roberts recorded a new deed of trust stating that the release was intended to apply only to the portion of the property specified in the release. The new deed of trust further stated that Roberts still owed on the note that was secured by a lien on the rest of the property.

Six days before the new deed of trust was recorded, Jones recorded an abstract of judgment against Roberts. Jones brought suit to foreclose on Roberts's property arguing that because the release stated the note on the property had been paid in full, the bank did not have a valid lien at the time Jones's judgment lien attached. At trial, both the bank and Roberts testified the "paid in full" language contained in the release was a mistake.

1. Chase only appealed the trial court's denial of its summary judgment and the granting of Cadle's motion on the issue of the priority of the liens. Chase did not appeal the trial court's holding that its abstract of judgment filed on October 11, 1994, failed to comply with statutory requirements.

The court concluded the evidence of mutual mistake was uncontradicted and, under the circumstances, the language in the release did not amount to "any evidence" of full payment. *Id.* at 877. The court noted the error in the release was apparent on its face because, although the document stated the note had been paid in full, only a portion of the property was specifically released from the lien. *Id.* According to the court, this discrepancy put any interested party on inquiry notice about the mistake contained in the document. *Id.* In addition, the new deed of trust recorded by the bank reciting the nature of the mistake together, with the testimony at trial, constituted clear evidence of mutual mistake. *Id.* Given the uncontradicted evidence that the "paid in full" language in the release was a mistake, the court rendered judgment restoring the status of the bank's lien as the prior and superior lien. *Id.* at 878.

The facts in the case before us are significantly different from those presented in *Jones.* In this case, there is no mistake apparent on the face of the release. The document recites the note was paid in full and releases all the property subject to the deed of trust. There is no discrepancy in the release that would put one on any inquiry notice of a possible error.

■ Furthermore, what the Martins are seeking is not a correction of the release, but its rescission. Rescission is an equitable remedy that operates to extinguish a contract that is legally valid but must be set aside due to fraud, mistake, or for some other reason to avoid unjust enrichment. *Humphrey v. Camelot Retirement Cmty.*, 893 S.W.2d 55, 59 (Tex.App.-Corpus Christi 1994, no writ); *Country Cupboard, Inc. v. Texstar Corp.*, 570 S.W.2d 70, 73–74 (Tex.Civ.App.-Dallas 1978, writ ref'd

n.r.e.). Nothing in the record indicates the bank, or any other party, is equitably entitled to a rescission of the release. Unlike the defendants in *Jones*, the Martins have not presented any evidence that the release was executed by mistake. The Martins suggest the bank's attempted substitution of a transfer of lien for the release of lien is clear and unambiguous evidence of a mistake in the release. But the attempted transfer is no evidence that the parties to the release were mistaken about the content or the effect of the release at the time it was executed. At most, it shows that approximately two months after executing the release, the bank wished to set aside the release and transfer the lien to Johnstone. Absent a showing that the bank was equitably entitled to rescind the release, however, the later transfer of the released lien is without effect. *See Cadle Co. v. Caamano*, 930 S.W.2d 917, 920 (Tex.App.-Houston [14th Dist.] 1996, no writ) (ex parte affidavit purporting to alter duly executed and recorded full release was not effective for any purpose). The attempted transfer does not create a fact issue concerning Cadle's summary judgment evidence showing a facially valid release of the bank's lien, which at the time was the only lien superior to the judgment liens.

■ The Martins next argue that Johnstone acquired equitable title to the Northaven property superior to the judgment liens when she paid off the August 1, 1994 note. *See Lewisville State Bank v. Blanton*, 520 S.W.2d 607, 608 (Tex.Civ.App.-Waco 1975), *rev'd on other grounds*, 525 S.W.2d 696 (Tex.1975) (per curiam). According to the Martins, this equitable title was then passed on to Pratt Sr. at the foreclosure sale and the foreclosure resulted in the extinguishment of the judgment

liens. Title would then have passed to the Martins when they purchased the property from Pratt Sr.

A fundamental problem with this argument is that there is no evidence in the record showing Johnstone paid the debt entitling her to equitable title in the property. The release states only that the bank acknowledges full payment of the note and releases the lien on the Northaven property. There is no mention of Johnstone. The purported transfer states that in exchange for "good and valuable consideration" the bank agrees to transfer the August 1, 1994 note and all attendant liens to Johnstone. The transfer makes no mention of what consideration was paid, who paid it, or when it was paid. The summary judgment record does not contain any evidence from the bank or Johnstone about the circumstances surrounding Johnstone's attempt to acquire title to the property. Mere speculation about what transpired between the bank and Johnstone will not defeat Cadle's summary judgment evidence showing the superiority of the judgment liens.

■ The Martins alternatively claim the trial court erred in granting judgment in favor of Cadle and Chase because foreclosure of the judgment liens is barred by both the three and four-year statutes of limitations. The three-year statute of limitations relied upon by the Martins is the statute governing adverse possession. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 16.024 (Vernon 2002). Section 16.024 of the civil practice and remedies code states that "a person must bring suit to recover real property held by another in peaceable and adverse possession under title or color of title not later than three years after the day the cause of action accrues." *Id.* The Martins reliance on this statute is mis-

placed because they can claim neither title nor color of title to the Northaven property.

The Martins purchased the property from Pratt Sr., who acquired the property at Johnstone's foreclosure sale. Cadle presented summary judgment proof that the bank's lien on the property was released and the release was recorded before Johnstone foreclosed. As discussed above, the Martins failed to raise a fact issue about the validity of the release. Because the lien was released, there was no lien to foreclose, and the substitute trustee had no power to transfer title to the property to Pratt Sr. *See Schneider v. Sellers,* 98 Tex. 380, 84 S.W. 417, 421 (1905). The Martins, therefore, could not have obtained title or color of title from Pratt Sr. *See Sebesta v. Daniels,* 812 S.W.2d 641, 646 (Tex.App.-Houston [14th Dist.] 1991, writ denied) (conveyance by one without authority or title does not furnish color of title); *see also, Field Measurement Serv., Inc. v. Ives,* 609 S.W.2d 615, 620 (Tex.Civ. App.-Corpus Christi 1980, writ ref'd n.r.e.) (void deed is neither title nor color of title for purposes of three-year statute of limitations).

The Martins contend that even if they did not acquire legal title to the property from Pratt Sr., they acquired equitable title as bona fide purchasers. In support of this argument, the Martins rely on *Slaughter v. Qualls,* 139 Tex. 340, 162 S.W.2d 671 (Tex.1942). In *Slaughter,* the supreme court held that a party who purchased land in good faith from one who acquired the land at a void foreclosure sale acquired good title to the land. *Id.* at 675. Good title was acquired not because legal title was actually passed, but because it would have been inequitable to deny title to the party that purchased the property

in good faith reliance on the deed of trust that gave the appearance of good title passing at the void foreclosure sale. *Id.* The foreclosure sale in *Slaughter* was void because there was never a default in payment on the note and, therefore, the trustee had no authority under the terms of the deed of trust to sell the property. *Id.* The absence of a default could not have been determined from the deed of trust or any other document in the chain of title. Accordingly, subsequent purchasers without notice of the defect in the foreclosure sale acquired equitable title to the land.

In this case, the Martins cannot be considered innocent purchasers without notice because, although they submitted affidavit testimony stating they purchased the property in good faith, they are charged with knowledge of all facts appearing in the chain of title to the property. *See Westland Oil Dev. Corp. v. Gulf Oil Corp.,* 637 S.W.2d 903, 908 (Tex.1982). Any description, recital of fact, or reference to other documents in the chain of title puts the purchaser on inquiry notice, and "he is bound to follow up this inquiry, step by step, from one discovery to another and from one instrument to another, until the whole series of title deeds is exhausted and a complete knowledge of all matters referred to and affecting the estate is obtained." *Id.*

The chain of title to the Northaven property shows the Martins acquired the property from Pratt Sr., who purchased the property at a foreclosure sale. The substitute trustee's deed conveying the property to Pratt Sr. shows Evelyn Johnstone as the holder of a note secured by the deed of trust on the Northaven property. The trustee's deed further states there was a default entitling Johnstone to sell the property at the foreclosure sale. The note

and deed of trust were not transferred to Johnstone, however, until after the foreclosure took place. Thus, the chain of title affirmatively shows that Johnstone had no authority to foreclose on the property at the time of the sale to Pratt Sr. Furthermore, the transfer to Johnstone references the earlier release of the lien, putting the purchaser on inquiry notice of the validity of the transfer. Even if the Martins believed the later transfer somehow "cured" the earlier release, the timing of the transfer put them on notice of the defects within their chain of title. Because the chain of title reveals that title could not have been legally passed to the Martins, they cannot be considered bona fide purchasers with good title to the Northaven property. Absent title or color of title to the property, the trial court correctly concluded the Martins were not entitled to the protections of the three-year statute of limitations.

■ The Martins also contend that the four-year statute of limitations applies in this case because the superiority of the judgment liens depends on the wrongfulness of the foreclosure sale instituted by Johnstone. Wrongful foreclosure actions are governed by the four-year limitations statute. *See Gonzales v. Lockwood Lumber Co.,* 668 S.W.2d 813, 815 (Tex.Civ.App.-Houston [14th Dist.] 1984, writ ref'd n.r.e.). Contrary to the Martin's contention, the superiority of the judgment liens is dependent solely upon the validity of the release. Although the trial court's judgment upholding the validity of the release results in a voiding of the foreclosure sale, this result is incidental to Cadle's and Chase's claims. *Cf. Reynolds v. Farmers & Merchs. Nat'l Bank,* 135 S.W.2d 556, 557–58 (Tex.Civ.App.-Fort Worth 1939, no writ) (four-year statute of limitations did

not apply where cancellation of void deed from foreclosure sale was mere incident to plaintiff's suit). Cadle and Chase never sought to directly challenge the validity of the foreclosure, but instead argued that the foreclosure conducted after the vendor's lien was released had no effect on the superiority of their judgment liens. The trial court correctly denied the Martins' request for judgment on the basis of the four-year statute of limitations.

■ Finally, the Martins challenge the amount of the trial court's judgment. They argue the judgment liens could only attach to Pratt's equity interest in the property rather than his full undivided one-half interest. The Martins argue the trial court erred in awarding Cadle and Chase one-half of the proceeds from the sale of the property because Pratt's interest was limited to the amount he had paid on the note. In support of this argument, the Martins state the general rule that judgment liens attach only to the interest in the land owned by the judgment debtor. *See Jones,* 183 S.W. at 876. Pratt's interest in the Northaven property, however, was not limited to an equity interest. Once the bank released its lien, Pratt and his father jointly held legal title to the property free of any connection to the note. To the extent the Pratts still may have owed on the note, the bank could not look to its released lien on the property to satisfy the debt. The trial court correctly held the judgment liens attached to Pratt's undivided one-half interest.

■ In Chase's appeal, it also challenges the amount awarded in the trial court's final judgment. Chase contends the trial court erred in applying the proceeds from the sale of the property to the judgment liens in order of their priority by recording date. Long standing Texas law holds that judgment liens of different dates attach simultaneously to property acquired after the liens were recorded. *See Willis v. Downes,* 46 S.W. 920, 922 (Tex.Civ.App.1898, writ ref'd); *Matula v. Lane,* 55 S.W. 504, 508, 22 Tex.Civ.App. 391 (Tex.Civ.App.1900, writ ref'd); *See also, McAllen State Bank v. Saenz,* 561 F.Supp. 636, 639 (S.D.Tex.1982). The judgment holders are entitled to a pro rata portion of the proceeds from the sale of the after-acquired property regardless of the order in which the liens were recorded. *See Matula,* 55 S.W. at 508; *Saenz,* 561 F.Supp. at 639. Although Cadle offers vigorous argument urging the court to depart from this rule, we decline to do so given that the rule has been established in Texas for over one hundred years. We conclude the trial court erred in granting Cadle's motion for summary judgment on this issue and in failing to grant Chase's motion.

■ Chase also contends the trial court erred in granting Cadle an award of attorney's fees and expenses against it. Chase argues simply that because Cadle should not have prevailed in its motion for summary judgment against Chase, it was likewise not entitled to an award of attorney's fees and expenses against Chase. Chase's argument is without merit, however, because this rationale is not determinative in a declaratory judgment action.

The Uniform Declaratory Judgments Act does not limit the award of attorney's fees and costs to the prevailing party. *See* Tex. Civ. Prac. & Rem.Code Ann. § 37.009 (Vernon 1997); *West Beach Marina, Ltd. v. Erdeljac,* 94 S.W.3d 248, 270 (Tex.App.-Austin 2002, no pet.). The court may award costs and attorney's fees to any party so long as the award is equitable and

just. TEX. CIV. PRAC. & REM.CODE ANN. § 37.009. Chase does not argue the award was either inequitable or unfair. Accordingly, we resolve this issue against Chase.

Based on the foregoing, we reverse that portion of the trial court's judgment ordering the proceeds from the foreclosure of the Northaven property to be applied to the judgment liens in order of their priority. We render judgment that the proceeds are to be applied to the judgment liens on a pro rata basis. We affirm the trial court's judgment in all other respects.