## SHEAR CO. v. CURRIE.

### In re BRIDGEWATER.

(Circuit Court of Appeals, Fifth Circuit. December 11, 1923. Rehearing Denied January 31, 1924.)

#### No. 4207.

1. **Attachment ⬮178, 180—Attachment lien attaches only to interest of debtor; attachment lien held inferior to contract lien unless affected by recording laws.**

   An attachment lien, perfected by judgment, under the law of Texas is superior to a prior unrecorded deed, not on the ground of estoppel, but because Rev. St. Tex. art. 6824, makes such deed void as to innocent purchasers and creditors, and as to conveyances or liens not within such statute the common-law rule prevails that an attachment lien attaches only to the interest of the debtor.

2. **Vendor and purchaser ⬮260(2)—Vendor's lien held superior to attachment lien.**

   A vendor's lien, valid as between the debtor and creditor, though an assignment of the same was unrecorded, and the lien had been erroneously released of record, *held* superior to a subsequent attachment lien.

Petition to Superintend and Revise from the District Court of the United States for the Western District of Texas; Duval West, Judge.

In the matter of P. P. Bridgewater, bankrupt. On petition of the Shear Company to revise an order of the District Court awarding priority to a lien held by James Currie, executor of the will of D. M. Currie, deceased. Affirmed.

J. D. Williamson, of Waco, Tex., for petitioner.

W. M. Sleeper, of Waco, Tex. (Sleeper, Boynton & Kendall, of Waco, Tex., on the brief), for respondent.

Before WALKER and BRYAN, Circuit Judges, and GRUBB, District Judge.

GRUBB, District Judge. This is a petition to revise in matter of law an order of the District Court for the Western District of Texas in the bankruptcy proceedings of P. P. Bridgewater, which disallowed the petitioner the Shear Company's petition for a priority of lien on a certain tract of land over the lien of the estate of D. M. Currie, deceased. The lien of the petitioner arose out of the levy of an attachment on April 23, 1920, on the land as the property of the bankrupt for a debt due from him and its subsequent foreclosure. The lien of the respondent arose out of a vendor's lien, created October 16, 1911, and a subsequent unrecorded transfer of it by the bankrupt to the respondent. The case was tried without a jury and upon agreed facts substantially as follows:

The bankrupt on October 16, 1911, conveyed the land to J. T. Bowen by warranty deed, in which a vendor's lien was reserved to secure part of the unpaid purchase money. There was a prior lien on the land which was assumed by Bowen. On October 18, 1913, the bankrupt assigned the notes executed by Bowen for the unpaid purchase money

and the vendor's lien securing them to D. M. Currie. The assignment was not recorded. On December 14, 1916, J. T. Bowen reconveyed the land to the bankrupt for a recited consideration of $7,500, and the assumption of the prior lien. This deed was recorded on December 16, 1916. On the same day the bankrupt, with consent of Currie, and for the purpose of securing a new loan to take up the prior lien, and of postponing the Currie lien to that of the new loan, released the vendor's lien, reserved by him in the deed from him to Bowen. The release recited satisfaction of the Bowen notes, but they were not in fact paid. The release was recorded December 26, 1916. On December 15, 1916, the bankrupt executed a deed of trust on the lands to the Commerce Farm Credit Company for $5,000, substituting it for existing prior liens to the Currie lien, and it was recorded December 26, 1916. On August 21, 1918, the bankrupt and the executor of D. M. Currie executed a written instrument, reciting that the estate of Currie had a vendor's lien on the land created by the deed to Bowen from the bankrupt, and transferred by the bankrupt to D. M. Currie along with notes it secured, on October 18, 1913; that the bankrupt had reacquired the land, and had assumed the lien. The agreement acknowledged the indebtedness, and granted an extension, reserving to the Currie estate all the rights it theretofore had in the notes and lien, except as their maturity was postponed by the terms of the extension. This instrument was not recorded until December 1, 1921. The bankrupt filed a voluntary petition on April 4, 1922. On April 22, 1920, the Shear Company filed its attachment suit. On April 23, 1920, the levy on the land was recorded in the office of the county clerk, and on November 20, 1920, the attachment lien was forclosed.

Out of these facts is presented the question whether or not, under the laws of Texas, the lien of the Shear Company, the attaching creditor, is superior to the lien of the estate of D. M. Currie under an unrecorded assignment of a vendor's lien, the lien having been released on the record before the levy of the attachment.

[1] At common law, apart from the effect of registration statutes, the lien of a creditor, obtained through the institution of legal proceedings, is confined to the interest of the debtor in the property at the time of the levy of the process, and this is the rule in Texas. The rule in Texas in cases of attachment liens has been held to be different by reason of its registration statutes from the common-law rule. In the case of Paris Grocer Company v. Burks, 101 Tex. 106, 105 S. W. 174, the Supreme Court of Texas said:

"That the lien of the attachment must prevail over the unrecorded deed, unless the creditor, prior to the levy, had notice of such deed, is a proposition put beyond all question by the decisions of this court. The right of the creditor is purely statutory, and requires nothing but the concurrence of the conditions required by the statute to make it complete. The statute by its terms makes void the unrecorded deed as against 'all creditors,' but the courts hold this to mean all creditors who have acquired liens without notice of the deed. When these elements exist, the right of the creditor is perfect in law, and no considerations of equity or questions of estoppel enter into the case. It is wholly immaterial whether the creditor has ever examined the records as to the title of his debtor or not, since a deed of the property executed by the latter is, by the statute, made void as against the lien of the former, unless he is affected with notice."

In that case, an unrecorded deed was postponed to an attachment lien, not upon the ground that credit had been extended to the apparent owner on the faith of the record, which estopped the holder of the unrecorded deed, but because the statute declared the unrecorded deed to be void as to creditors, regardless of any estoppel. This principle was later recognized in Parks v. Worthington, 101 Tex. 505, 109 S. W. 909. In the case of First State Bank v. Jones, 107 Tex. 623, 183 S. W. 874, the same court held that a judgment lien creditor did not stand in the same position as an innocent purchaser for value without notice, because his position had not been changed to his disadvantage in order to acquire his lien, and that he was entitled only to whatever interest his judgment debtor had in the property levied upon, and that the lien of the judgment creditor was inferior to that of a prior recorded deed of trust, though, through mutual mistake, a release of the deed of trust had been executed and recorded before the levy, which recited payment of the entire debt and fully released the lands on which the judgment lien was claimed.

The two cases might be construed as announcing different rules in cases of attaching and of judgment creditors. Such a construction is to be avoided, for manifestly there is no reason for different rules. An attachment creates only an inchoate lien, which ripens into a perfect lien, only upon the rendition of judgment. It is inconceivable that a creditor who reduces his claim to judgment, and his attachment lien to a judgment lien, thereby loses the superiority he obtained through the levy of his attachment. Yet this would be the result of construing the two cases as intended to apply different rules, under like conditions, to attachment and judgment liens. We think the cases can be explained otherwise. The Burks Case was the case of an unrecorded deed. It was clearly within the terms of article 6824, R. S. Texas, which requires the record of deeds, upon the penalty, as to creditors and innocent purchasers, of avoidance. The Texas courts have construed the words "all creditors" of the statute to mean creditors who have acquired a lien by legal proceedings without notice of the unrecorded instrument. Paris Grocer Company v. Burks, supra. In the Burks Case the common-law rule that the attachment lien only fastened upon the interest of the debtor was changed by the terms of article 6824, so as to make it effective against the interest of a grantee of the debtor, claiming under an unrecorded conveyance. This was accomplished solely because the language of article 6824 made such unrecorded conveyance inoperative as to creditors. In the Jones Case, article 6824 was not a factor. In that case there was no unrecorded instrument involved. The bank's deed of trust and the release of the lien of the deed of trust were both on record. The court held that the record of the release would protect an innocent purchaser, who parted with a valuable consideration on the faith of its recitals, but would not protect a judgment creditor, who gave up nothing to acquire his lien. An innocent purchaser was held to be protected, not through the registration laws, but by estoppel. The creditor, having parted with nothing, was not in a position to invoke estoppel, and article 6824 did not apply to him.

[2] In the present case there was an unrecorded assignment of a vendor's lien, and a release on the record by the record owner of the lien, though the debts secured by the vendor's lien had not in fact been paid, nor the lien satisfied. Undoubtedly an innocent purchaser would have received protection in this situation through estoppel, regardless of the registration acts. First State Bank v. Jones, supra; Wooten Grocer Company v. Lubbock State Bank (Tex. Com. App.) 215 S. W. 835; Traders' National Bank v. Price (Tex. Com. App.) 228 S. W. 160. A creditor would receive like protection only if he could bring himself within the registration acts; otherwise the common-law rule, by which his lien gave him no more than his debtor owned, when the levy was made, would prevent his getting by his levy an interest which his debtor had parted with. In the Burks Case, the lien of the creditor prevailed over the unrecorded deed because of article 6824. In this case the unrecorded assignment of the vendor's lien did not come within the terms of article 6824. It was not a bargain, sale, or other conveyance of any land, tenement, or hereditament, which passed an estate of freehold, inheritance, or term of years, nor was it a deed of trust or mortgage.

Whether or not such an assignment was within article 6824 was left undecided in the case of Traders' Bank v. Price by the Supreme Court of Texas. We are therefore free to decide it according to our convictions. In the same case the Supreme Court of Texas said that an assignment of a vendor's lien was an instrument the record of which was permitted under article 6823, as being in the class of "other instruments of writing concerning any lands or tenements," and that an innocent purchaser who had parted with value on the faith of the record could invoke the doctrine of estoppel and claim protection under it. Article 6823 does not avoid unrecorded instruments, authorized by it to be recorded, either in favor of creditors or purchasers. Unless a creditor can bring himself within the terms of article 6824 he is therefore without protection. Article 6823 gives him none, and, having parted with nothing of value, he cannot invoke estoppel. As an assignment of a vendor's lien is not within the terms of article 6824, the lien of an attaching creditor does not prevail over it. An attaching creditor is left with the rights he had at common law, and can claim, as against such an unrecorded assignment, only the actual interest of his debtor at the time of the levy.

This was the conclusion reached by the District Court, and its judgment is affirmed.