## SABINE & EAST TEXAS RAILWAY COMPANY V. R. W. EWING.
### No. 513.

1. **Fact Case—Defective Machinery.**—The engine and tender were coupled by an iron bar, one end of which was fastened to the engine and the other bolted by an iron pin to a piece of casting attached to the tender. On the casting were two parts, the flange and the lug, between which the drawbar entered, and through which, as well as the bar, the coupling bolt passed. The lug was pulled off and the holes in the flange broke out, releasing the pin entirely, and plaintiff, who was the fireman, engaged in his duties as such, was thereby caused to fall between the tender and engine, and injured. There was evidence tending to show that there was an old crack in the casting at the place where it broke. The casting had been on the tender a month, and no inspection of it was shown. The injuries received by the plaintiff were severe and permanent, and a verdict for $20,000 was affirmed,

2. **Evidence as to Wounds and Their Probable Effect.**—The court did not err in allowing the physician who was called in by the attending physician, about three weeks after plaintiff had been wounded, to testify as to the nature of his wounds and their probable effect.

3. **Admissible Evidence in Rebuttal.**—Defendant having proved that the broken castings, when they arrived at Beaumont from the place of the accident, were in the condition in which they were when the trial was had and they were exhibited in evidence, and their appearance at that time indicating that the whole casting had been broken at the same time and that there was no old crack in it, and the witness who testified to the old crack, having sworn that the casting when exhibited on the trial was not in the same condition that it was when he had examined it at the place of the accident, but that a part of it was gone, it was admissible to allow testimony as to the condition of the roadbed between the place of the accident and Beaumont, to explain how additional breaking of the casting could have occurred, it having been shown that the drawbar of the engine was chained to the tender, and thus fastened they were carried to Beaumont, a distance of twenty miles.

**4. Objectionable Charge.**—It being the duty of the engineer in charge of the engine and tender to inspect them, and the evidence having shown, that before the accident he had made a cursory examination of the engine, but had not inspected the flange and lug, which had broken, the general charge having presented the law of the case, it was not error to refuse a charge which gave prominence to such inspection by the engineer.

**5. Contributory Negligence—Proper Charge.**—There was no error of which appellant can complain in the following charge: "If you believe from the the evidence that the alleged old crack did exist, and was the cause of plaintiff's injuries, if any, yet if you believe that plaintiff could, by the exercise of the care and prudence incumbent upon him as above stated, have known thereof and foreseen and prevented such injuries, if any, you will find for the defendant."

APPEAL from Jefferson. Tried below before Hon. STEPHEN P. WEST.

*O' Brien & O' Brien* and *Perryman, Gillespie & Bullett,* for appellant.

1. If the wounds examined by Dr. B. F. Calhoun were the same as those alleged in the petition to have been received, such portions of his testimony as consisted of hypothetical opinions of the condition, effect, and consequences of said wounds and injuries, based upon an examination made in April or May, 1890, were not the best evidence as to their effects and results to plaintiff, as would have been the testimony of expert witnesses based upon an examination now made in June, 1893. Longino v. Ward, 1 Texas Civ. App., 523; 1 Greenl. on Ev., par. 82.

2. The court erred in overruling the objections to testimony, that "the condition of the defendant's roadbed was rough and bad," the objection being "that there was no allegation in plaintiff's petition to authorize the admission of such testimony for the plaintiff." Mims v. Mitchell, 1 Texas, 443; McGreal v. Wilson, 9 Texas, 426; P. E. Co. v. Darnell, 62 Texas, 639; Guess v. Lubbock, 5 Texas, 535; Gillies v. Wofford, 76 Texas, 70; 2 Texas Civ. App., 495; Hall & Jones v. Jackson, 3 Texas, 309; Denison v. League, 16 Texas, 408; 1 Greenl. on Ev., par. 51; Greer v. Railway, 21 S. W. Rep., 649.

3. The verdict was excessive. Greer v. Railway (Ky.), 21 S. W. Rep., 651; Railway v. Ewing, 21 S. W. Rep., 700.

*W. L. Douglass, J. F. Lanier,* and *Greer & Greer,* for appellee.—1. The proof showing that B. F. Calhoun was a regular practicing physician and surgeon, actively engaged as such since 1875; that he treated many similar cases to that of plaintiff; that he was called in shortly after the accident by the regular attending physician, Z. T. Fuller, now deceased; that he advised and treated plaintiff with said Fuller, and after Fuller's death continued the treatment as plaintiff's physician—these facts qualified him to testify descriptively as to the wounds, and to give his opinion as an expert on the probable future effect of

these injuries on plaintiff, mentally and physically, and the court did not err in so ruling.

2. The injuries of plaintiff being very severe, and the testimony showing that he yet suffers from them and that they may yet result in his death, the verdict is not excessive.   Railway v. Brazzil, 78 Texas, 317; Railway v. Lane, 79 Texas, 648.


WILLIAMS, ASSOCIATE JUSTICE.—The judgment from which this appeal is taken was recovered in the court below, by appellee against appellant, for $20,000 for personal injuries inflicted upon the former through the negligence of the latter.

Appellee was a fireman on one of appellant's engines, and while he was engaged in performing his duties, the coupling between the engine and tender broke, causing him to fall between them, where he received the injuries for which he recovered.

The engine and tender were coupled together by an iron bar, of which one end was fastened to the engine, and the other was bolted by an iron pin to a piece of casting attached to the tender.   There were upon the casting two parts, called the flange and the lug, between which the drawbar entered, and through which, as well as through the bar, passed the bolt which coupled them together. The lug was pulled off and the holes in the flange broke out, releasing the pin or bolt entirely, and allowing the engine and tender to separate.   The pieces which were broken from the casting were never found.   It was shown by a witness for plaintiff, that he examined the parts remaining attached to the tender after the accident; that a part of the lug still remained upon the casting, and upon it was the evidence of an old crack where it had parted.   The witness stated, that he could tell from the appearance of the iron that there had been an old crack in it.   The pieces of the casting which were taken from the tender, after the accident, were shown to this witness at the trial, and he stated that they were not in the same condition as when he examined them at the place where plaintiff was hurt; and that the piece of the lug which remained upon the casting when he examined it was now gone; and that the iron as shown at the trial was broken in pieces, while it was solid when he had examined it.   It was shown by witnesses for defendant, that the iron was taken from the tender when it arrived at Beaumont in the condition in which it was exhibited at the trial.   Expert witnesses gave it as their opinion, that the breaks upon it all occurred at the same time, and that no part of the broken surface indicated that a break at any point had occurred before the other parts were broken.

As tending to suggest the manner in which the casting may have been broken after his witness saw it, plaintiff showed, that after the accident the drawbar of the engine was chained to the end of the tender, and that as thus fastened they were carried to Beaumont, a

distance of about eighteen or twenty miles, and that the roadbed was in bad condition; the deduction sought to be drawn being, that the drawbar, coming in contact with the casting, had broken off the part of the lug which the witness had stated remained after the accident.

The defendant showed, that it was the duty of the engineer alone to inspect the engine, which he did at each end of the route before starting on a trip; that on the day when appellee was hurt he made the usual inspection before going out with the engine, and discovered no defect in this casting or elsewhere. It appears, however, that the "usual inspection" did not include an examination of such parts of the machinery as this casting, which could only be examined by getting under the engine, but consisted merely of looking "around" or "over" the engine. This casting had been on the tender for a month, and as it was not the duty of any one but the engineer to inspect, and as his inspection did not reach it, the inference is plain, that there had been no examination whatever as to its condition since the day when it was put on.

The character of the injuries sustained by appellee are to some extent illustrated by the fact, that he was rendered unconscious and remained so for four days; that he was confined to the house for four months, and of this time, to his bed for two months; that he was unable to do any work for about sixteen months after the accident.

It is shown by uncontradicted testimony, that the use of his right arm and shoulder is badly impaired; that his sight and hearing are seriously and permanently injured; that the bones of his shoulder and head are diseased, resulting at times in inflammation and suppuration; that the muscles and ligaments of his arm and shoulder are weakened; that his brain is injured, causing a crossing of the eyes and a weakening of the mind; and that, as the probable result of this injury to the brain, epilepsy or shortening of life may follow. He has suffered and still suffers great bodily and mental pain. He was, when injured, 24 years of age, strong and healthy, and was earning $2.16 per day. He has for a few months, at different times since he was hurt, earned $45 to $50 per month, but always found difficulty in working; and finally, if his statement be true, was forced to quit. The expert testimony shows that the injuries stated are probably permanent. His jawbone was broken, but has healed, with the loss of a tooth.

Our conclusions are, that the jury were authorized to find from the evidence that the casting had been broken before appellee was hurt for a sufficient length of time to have enabled appellant with proper diligence to have discovered it; and that appellant failed to use ordinary prudence in looking after its condition. And that appellee's injuries were caused by the omission of the defendant to perform its duty in this particular.

There is no question of contributory negligence in the case, though the court below charged upon it.

We also conclude, in view of the facts that a former jury found for the appellee $30,000 (which this court held to be excessive), and that each of the verdicts has received the approval of the district judge, that the amount of damages allowed is not so clearly excessive as to show that the verdict was the result of passion or prejudice.

*Conclusions of Law.*—1. The court did not err in admitting the evidence of Dr. Calhoun as to the nature of appellee's wounds, nor in allowing him to give his opinion as to their probable effect.

2. There was no error in allowing proof of the condition of the roadbed for the purpose indicated in the above statement of the case. No recovery was sought on the ground that the road was in bad condition, nor was there any effort to show that the accident resulted from that fact. The sole object of the evidence, to which it was carefully restricted, was to explain how additional breaking of the casting could have occurred after the witness Glover saw it. That was one of the turning points of the controversy. If the part of the lug which Glover said was left was not in fact there when he made his examination, his testimony was badly shaken, if not destroyed; and it was proper to allow inquiry as to any fact that could tend to establish the truth of the matter.

3. The refusal of the first special charge requested by defendant was not error. The general charge presented the law of the case as fully as was necessary, and the special charge was a simple attempt to state the rules in another and somewhat argumentative form. Besides, this charge gave too much prominence to the cursory inspection which was made by the engineer of his engine. Confessedly there was no examination of the place where the defect existed, if it existed at all. It was therefore proper for the court to leave to the jury the question whether or not the defendant had exercised such care as it ought to have done. To have intimated in the charge, that such an inspection as the evidence showed, was sufficient, would have been erroneous.

4. The second special charge, as copied in the record, differs from that set out in the appellant's brief. In the brief, it is copied so as to read, "If you believe there was *not* an old crack," etc., while in the record, it is, "If you believe there *was* an old crack," etc. The omission of the word "not" makes the charge, as contained in the record, contradictory and absurd. But taking it as it is in the brief, we do not think the refusal of it was error, in view of the full instructions given by the court.

5. There was no error of which the appellant could complain in the giving of the charge upon the subject of contributory negligence, copied in the tenth assignment.

6. The remaining assignments all question the sufficiency of the evidence to sustain the verdict, and are disposed of in our conclusions of fact above stated.

As it appears that there was a defect in the casting, which the defendant ought to have known, by the use of ordinary care, and as the injury to plaintiff was proximately caused by the defect thus negligently allowed to remain, the defendant is liable for the damages resulting.

The judgment is therefore affirmed.

*Affirmed.*

Delivered April 12, 1894.

Writ of error was refused by the Supreme Court, October 8, 1894.