**In the Matter of BILL HEARD ENTERPRISES, INC., et al., Debtor(s).**

**Twentieth Century Land Corp., Plaintiff(s),**

v.

**Landmark North Freeway, Ltd., Istar Financial, Inc. d/b/a Autostar, Successor in Interest to Falcon Financial, LLC, et al., Defendant(s).**

**HSBC Bank USA, as Trustee for the Registered Holders of Falcon Auto Dealership Loan Trust 2003–1 Loan–Backed Bonds, Successor–In–Interest to Falcon Financial, LLC d/b/a Falcon Lending, LLC, Counterclaim Plaintiff**

v.

**Twentieth Century Land Corp., Counterclaim Defendant.**

**Bankruptcy No. 08–83029–JAC–11. Adversary No. 09–80023–JAC–11.**

United States Bankruptcy Court, N.D. Alabama, Northern Division.

Nov. 16, 2009.

Clifton Charles Mosteller, Derek F. Meek, Marc P. Solomon, Robert B. Rubin, Burr & Forman, LLP, Birmingham, AL, for Twentieth Century Land Corp.

Charles L. Denaburg, Najjar Denaburg P.C., Birmingham, AL, Rita H. Dixon, Rita H. Dixon, LLC, Birmingham, AL, for Landmark North Freeway, Ltd.

James Robert Bussian, Maynard Cooper & Gale, P.C., Birmingham, AL, Kevin C.

Gray, Maynard, Cooper & Gale, P.C., Huntsville, AL, for HSBC Bank USA.

## MEMORANDUM OPINION

JACK CADDELL, Bankruptcy Judge.

On September 11, 2009, this Court entered a memorandum opinion and order tentatively granting summary judgment in favor of the plaintiff, Twentieth Century Land Corporation ("Twentieth Century"), and against the defendant, HSBC Bank USA ("HSBC"), a copy of which is attached hereto and incorporated herein.[1] The Court found that Twentieth Century was entitled to avoid its transfer of property to Landmark North Freeway, Ltd. ("Landmark North") under § 544(a)(3) of the Bankruptcy Code because the warranty deed transferring the property to Landmark North was not recorded and a hypothetical purchaser would not have had notice of documents recorded outside the chain of title. The Court further found that the possession of Landmark Chevrolet, Ltd. ("Landmark Chevrolet") as a tenant under a written lease agreement with Landmark North was not sufficiently open, visible, exclusive, and unequivocal to impart constructive notice of Landmark North's interest in the subject property by virtue Landmark Chevrolet's possession of same.

The Court gave the parties additional time to submit a statement of disagreement, if any, with the ruling before the Court made the ruling final. The parties having both submitted additional briefs, the Court now issues this supplemental and final opinion and a separate order granting summary judgment in favor of Twentieth Century. The Court adopts the

---

1. *See* Exhibit A, *In re Bill Heard Enterprises, Inc.,* 420 B.R. 553 (Bankr.N.D.Ala.2009).

findings of fact and conclusions of law recited in the September 11, 2009 memorandum opinion as further supplemented herein.

## CONCLUSIONS OF LAW

■ Pursuant to 11 U.S.C. § 544(a)(3), a trustee or debtor-in-possession "may avoid a lien on real property if a hypothetical bona fide purchaser could have taken an interest greater than that held by the lienholder."[2] Twentieth Century seeks to use its strong-arm powers under § 544(a)(3) as the debtor-in-possession to avoid the unrecorded transfer of the subject property to Landmark North. The existence of Twentieth Century's rights as a hypothetical bona fide purchaser depends on whether, under Texas law, a hypothetical purchaser would be charged with constructive notice of Landmark North's unrecorded interest in the property by virtue of Landmark Chevrolet's possession of the property as Landmark North's tenant.[3]

In its statement of disagreement with this Court's tentative memorandum opinion, HSBC produced a line of Texas cases, most of which were over 100 years old, setting forth the doctrine of attornment.[4] The term attornment is defined as "the act of a person who holds a lease-hold interest in land ... to become the tenant of a stranger who has acquired the fee in the land" or "an act by which a tenant acknowledges his obligation to a new landlord."[5] HSBC cites these early Texas attornment cases for the proposition that the mere attornment of a grantor's tenant to the grantee without any apparent change in the possession or occupancy of the land is constructive notice to prospective purchasers of the grantee's interest under an unrecorded deed. HSBC argues that is the case here since at the time of the conveyance from Twentieth Century to Landmark North, Twentieth Century's tenant, Landmark Chevrolet, entered into a new written lease with Landmark North. HSBC contends under the doctrine of attornment that Landmark Chevrolet's continued possession of the property would trigger constructive notice to prospective purchasers of Landmark North's interest under the unrecorded warranty deed.

While the Court recognizes the doctrine of attornment, the Court finds that the doctrine does not change current Texas law under which "possession giving rise to constructive notice must be visible, open, exclusive, and unequivocal."[6] The Court further finds that the attornment cases relied upon by HSBC are distinguishable from the facts of this case in which the Court is concerned with the rights of a hypothetical bona fide purchaser because the cases relied upon by HSBC do not involve traditional purchasers for value, much less hypothetical purchasers under § 544(a)(3) of the Bankruptcy Code. Instead, the cases relied upon by HSBC

---

**2.** *Gordon v. Terrace Mortg. Co. (In re Kim),* 571 F.3d 1342, 1345 n. 3 (11th Cir.2009).

**3.** *Abney v. Cox Enters., (Fulton Air Service Inc.),* 777 F.2d 1521, 1523 (11th Cir.1985)(recognizing that a "trustee's rights as a bona fide purchaser under § 544 are to be determined under applicable state law").

**4.** *See Duncan v. Matula,* 26 S.W. 638 (Tex. Civ.App.1894); *Mainwarring v. Templeman,*

51 Tex. 205, 1879 WL 7660 (Tex.1879); *Simmons v. Eakin,* 54 S.W.2d 1045 (Tex.Civ.App.-San Antonio 1932).

**5.** BLACK'S LAW DICTIONARY 130 (6TH ed.1990).

**6.** *Madison v. Gordon,* 39 S.W.3d 604, 605 (2001).

involve purchasers at execution sales who took nothing more than the rights of the intervening judgment creditor under Texas law.

In *Mainwarring v. Templeman,* 51 Tex. 205, 1879 WL 7660 (Tex.1879), the Texas Supreme Court found that a tenant's possession of real estate constituted constructive notice, as to third parties, of the title of the landlord. However, *Mainwarring* involved a situation in which the property was sold at an execution sale after the judgment debtor sold the property. Atcheson, the judgment debtor, sold 259 acres to Mainwarring in December of 1873, but Mainwarring did not record his deed until June of 1874. Before the sale, Atcheson was in possession of the property through a tenant. Immediately after the sale, the tenant became Mainwarring's tenant under a written lease and continued to occupy the land until after the date of a judgment taken against Atcheson. Templeman subsequently purchased the property at an execution sale under the intervening judgment dated February 13, 1874. Templeman then sued Mainwarring to quiet title and the court rendered judgment in favor of Mainwarring finding same to be in possession of the property through his tenant at the rendition of the judgment. The tenant's possession of the property was notice to the judgment creditor of Mainwarring's interest in the property.

On appeal, Templeman argued that the lower court erred in holding that mere attornment of the tenant "without any apparent change in the possession or occupancy of the land, was constructive notice

to the creditors and persons owning the judgment at the date of its rendition ... of the existence of the prior unrecorded conveyance...." [7] The Texas Supreme Court concluded that attornment of the tenant of the grantor to the grantee, without any apparent change or occupancy of the land, was constructive notice of the prior unrecorded conveyance to Mainwarring. However, the court specifically recognized that Templeman, the purchaser as the execution sale, did "not claim as a subsequent purchaser for valuable consideration without notice." [8] Instead, Templeman relied upon the rights of the judgment creditor. The court further recognized that a judgment and a sale thereunder carries "just such rights to the purchaser under it as resided in the judgment creditor." [9]

In *Duncan v. Matula,* 26 S.W. 638 (Tex. Civ.App.1894), the Texas Court of Civil Appeals held that where a landowner who was in possession of property by a tenant conveyed the land to the grantee and the tenant attorned to the grantee, and the deed was not recorded, the tenant's possession was constructive notice of the grantee's title to one who bought the land at a subsequent execution sale. Prior to the conveyance, the landowner was in possession of the property through a tenant. Within three of four days after the sale, the grantee rented the house to the same tenant. Subsequently, the plaintiff, Duncan, purchased the property at an execution sale before the grantee recorded the deed to the property. The court concluded that where a landowner, who is in possession by a tenant, conveys the land, and the tenant attorns to the grantee, and the deed is not recorded, the possession of

---

**7.** *Templeman v. Mainwarring,* 51 Tex. 205, 1879 WL 7660 *5 (Tex.1879).

**8.** *Id.* at *1.

**9.** *Id.*

such tenant is constructive notice of the grantee's title to one who buys the land at a subsequent execution sale against the grantor.

Similarly, in *Simmons v. Eakin*, 54 S.W.2d 1045 (Tex.Civ.App.1932), the Texas Court of Civil Appeals again recognized that possession of land through a tenant by a purchaser under a parol sale was sufficient to put a judgment creditor on inquiry as to the purchaser's ownership of the land before seizure under attachment.

The case before the Court does not involve a judgment creditor situation as did the cases relied upon by HSBC. In *First State Bank Amarillo v. Jones*, 107 Tex. 623, 183 S.W. 874 (1916), the Supreme Court of Texas explained that a judgment creditor is not a bona fide purchaser. The court stated:

A judgment lien holder is not in the same attitude as an innocent purchaser for value without notice. The latter has expended money in good faith to the amount of the purchase price of the land, and is justly entitled to be held harmless. It is right that the loss under such circumstances should be visited upon the landowner whose negligence, in failing to give notice through the deed records of his ownership, occasioned the loss, rather than it should fall upon the innocent purchaser who was without fault. The judgment lien holder is in a different attitude. He is not in any sense an innocent purchaser. If his lien fails to attach, he loses nothing. His judgment still remains unimpaired in its full amount. In such a case, even though the owner of the land has been negligent in failing to provide a correct record notice of his title, still his negli-

gence has not resulted in injury to the judgment creditor.[10]

Twentieth Century contends that unlike a purchaser at an execution sale, a hypothetical purchaser under § 544(a)(3) is generally the victim of fraud. A hypothetical purchaser is sold property by someone who no longer owns it and is misled into believing that the property belongs to that person despite the existence of a visible tenant on the property.

The issue before this Court is not whether a judgment creditor or purchaser at an execution sale would be charged with constructive notice of Landmark North's unrecorded interest in the subject property. Rather, this Court must determine what circumstances would give rise to Landmark North defeating the interest of a hypothetical bona fide purchaser for value under § 544(a)(3) of the Bankruptcy Code and current Texas case law.

■■■ In *Fletcher v. Minton*, 217 S.W.3d 755, 759 (Tex.App.-Dallas 2007), the Texas Court of Appeals summarized applicable Texas law regarding notice which will defeat the protection otherwise afforded a bona fide purchaser as follows:

The Texas Property Code provides for the recording of real property transfers and limits the validity of unrecorded instruments as follows:

(a) A conveyance of real property . . . is void as to a creditor or to a subsequent purchaser for a valuable consideration without notice unless the instrument has been acknowledged, sworn to, or proved and filed for the record as required by law.

(b) The unrecorded instrument is binding . . . on a subsequent purchas-

---

**10.** *First State Bank Amarillo v. Jones*, 107 Tex. 623, 183 S.W. 874, 876 (1916).

er who does not pay a valuable consideration or who has notice of the instrument.

Tex. Prop.Code Ann. § 13.001 (Vernon 2006). Thus, an unrecorded conveyance is binding on those who have knowledge of the conveyance. *Burris v. McDougald*, 832 S.W.2d 707, 709 (Tex.App.-Corpus Christi 1992, no writ). A person who acquires property in good faith, for value, and without notice of any third-party claim or interest is a bona fide purchaser. Status as a bona fide purchaser is an affirmative defense to a title dispute. *Madison v. Gordon*, 39 S.W.3d 604, 606 (Tex.2001).

Notice will defeat the protection otherwise afforded a bona fide purchaser. *City of Richland Hills v. Bertelsen*, 724 S.W.2d 428, 429 (Tex.App.-Fort Worth 1987, no writ). "Notice" is broadly defined as information concerning a fact actually communicated to a person, derived by him from a proper source, or presumed by law to have been acquired. *Flack v. First Nat'l Bank*, 148 Tex. 495, 226 S.W.2d 628, 631 (1950). Notice may be actual or constructive. *Id.* Actual notice results from personal information or knowledge, as well as those facts which reasonable inquiry would have disclosed. Constructive notice is notice the law imputes to a person not having personal information or knowledge. *Madison*, 39 S.W.3d at 606; *Flack*, 226 S.W.2d at 631–632.

A purchaser of land is charged with constructive notice of all claims of a party in possession of the property that the purchaser might have discovered had he made proper inquiry. *Apex Fi-*

*nancial Corp. v. Garza*, 155 S.W.3d 230, 234 (Tex.App.-Dallas 2004, pet. denied). **This duty to ascertain the rights of a party in possession of the property arises when the possession is open, visible, exclusive, and unequivocal.** *Id. see also, Madison*, 39 S.W.3d at 606.

(emphasis added)

■ In *Madison v. Gordon*, 39 S.W.3d 604, 607 (Tex.2001), the Supreme Court of Texas found that "Texas law requires visible, open, exclusive and unequivocal possession to put a purchaser on notice of a possessor's claims." Constructive notice is not triggered under current Texas law by a tenant's possession of property where the tenant's possession "is compatible with another's ownership assertion."[11]

In *Madison*, the tenant in a multifamily four-plex unit, Gordon, sued to recover title to the property. While incarcerated, Gordon signed a warranty deed transferring the four-plex to a bondsman. The deed was properly recorded. The bondsman later conveyed the property to Gordon's attorney, Williams, who properly recorded the deed. Subsequently, Williams transferred the property to his fiancé, Madison, by warranty deed. After Gordon's release, he continued to reside in the four-plex and subsequently sued Madison, Williams and the bondsman to recover title to the property claiming that the initial transfer was intended as a mortgage and that the subsequent transfer to Williams was fraudulent. As to Madison, Gordon claimed that she could not assert bona fide purchaser as an affirmative defense because she had actual or, alternatively, constructive notice of Gordon's claims to the property.[12] On appeal to the Supreme

---

**11.** *Madison v. Gordon*, 39 S.W.3d 604, 607 (Tex.2001).

**12.** She testified at the trial that she had no actual notice of Gordon's claims.

Court of Texas, the sole issue was whether Gordon's possession gave Madison constructive notice of his claims. The court found that Gordon's status as a tenant in one unit of a multifamily rental property was not sufficiently exclusive or unequivocal to provide constructive notice of Gordon's ownership claim.

The *Madison* court explained that "one purchasing land may be charged with constructive notice of an occupant's claims" under the implied-notice doctrine "if a court determines that the purchaser has a duty to ascertain the rights of a third-party possessor." [13] The duty of inquiry arises "only if the possession is visible, open, exclusive, and unequivocal." [14] The *Madison* court concluded, however, that "ambiguous or equivocal possession which may appear subservient or attributable to the possession of the holder of the legal title is not sufficiently indicative of ownership to impute notice as a matter of law of the unrecorded rights of such possessor." [15] Turning to the facts of the case, the court concluded that Madison was a bona fide purchaser, not subject to Gordon's claims, writing:

> Gordon's possession as a tenant in a multi-unit structure did not satisfy the criteria necessary to give Madison con-

structive notice. His possession was neither exclusive nor unequivocal. As rental property, one would expect occupants on the property.

Indeed, Gordon was one of four tenants living on the property and there was nothing to indicate he would later claim title. Gordon's occupancy simply does not meet the exclusive requirements necessary to impute notice of his claims to Madison.

Nor does Gordon's possession meet *Strong's* requirement that possession be unequivocal. When an occupants possession is compatible with another's ownership assertion, the occupant's possession cannot be said to be unequivocal. Here, Gordon's occupancy was compatible with Williams' assurances of ownership. Thus his possession was "ambiguous or equivocal possession which may [have] appear[ed] subservient or attributable to" Williams. *See Strong*, 98 S.W.2d at 350. Accordingly, his possession was not unequivocal. [16]

The *Madison* court did not question the ultimate outcome in several earlier cases finding possession was sufficient to place a purchaser on constructive notice stating, "But in each of these cases, the occupant lived in a single-unit dwelling. [17] Arguably,

---

13. *Id.* at 606.

14. *Id.* (citing *Strong v. Strong*, 128 Tex. 470, 98 S.W.2d 346, 350 (1936) wherein the court found that claimant residing as a member of the record title owner's family was not open or exclusive). *See also Boyd v. Orr*, 170 S.W.2d 829, 834 (Tex.Civ.App.-Texarkana 1943, writ ref'd)(holding minor children's occupancy in mother's homestead was "not the character of possession as would constitute constructive notice"); *DeGuerin v. Jackson*, 50 S.W.2d 443, 448 (Tex.Civ.App.-Texarkana 1932)(holding there was no "visible" circumstance pointing to claimant as possessor of field and noting that "all authorities agree"

that the possession must be "open, visible, and unequivocal, to impute notice to a potential purchaser," *aff'd*, 124 Tex. 424, 77 S.W.2d 1041 (1935)).

15. *Madison*, 39 S.W.3d at 607 (quoting *Strong v. Strong*, 128 Tex. 470, 98 S.W.2d 346, 348 (1936)).

16. *Id.* at 607.

17. This Court notes that the Supreme Court of Texas did not mention nor recognize the doctrine of attornment in the *Madison* decision even though Gordon was one of four tenants living on the property.

this sole possession of property implicates visibility, openness, exclusivity, and unequivocality." [18] The *Madison* court noted, however, that it would have been better to assess "*Strong's* requirements that the possession be visible, open, exclusive, and unequivocal." [19]

The case of *Apex Fin. Corp. v. Garza*, 155 S.W.3d 230 (Tex.App.2004) confirms that *Madison* represents the current state of Texas law that possession alone does not trigger constructive notice. While the mere possession of the subject property by the holder of an unrecorded quitclaim deed, Garza, was insufficient to put the holder of a sheriff's deed, Apex, on constructive notice of Garza's claim of possession, the *Apex* court determined that Garza's possession was visible, open, and exclusive under the following facts:

> There is evidence in the record that Garza bought the property in 1997 and thereafter, until evicted by Apex, used the property for his trucking business on a daily basis. Garza had signs on his trucks identifying his business, A–Garza Trucking. He parked his trucks, did mechanical work on them, and washed them at the property. The property is located in an industrial or warehouse area and has one building on it. Garza used the building as the office for his business and had someone working in the office Monday through Friday, and sometimes on Saturday. The holder of an outstanding lien on the property testified that Garza's trucks, with signs identifying the business, were on the property all the time. He said a person

could see that Garza was doing business there. We conclude the evidence supports the conclusion that Garza's possession was open and visible.

Turning to the element of unequivocality, the *Apex* court distinguished its facts from the *Madison* case, writing:

> In *Madison*, in which the supreme court held that possession of the property was equivocal, the purchaser had direct dealings with the record title owner, her fiancé, who assured her of his ownership of the multi-unit rental property. *Madison*, 39 S.W.3d at 605. The supreme court concluded the possession was not unequivocal because it was "compatible with another's ownership assertion." *Id.* at 607. However, the property here is not a multi-unit rental property like the property in *Madison*. Further, there is no evidence that Apex had any direct dealings with LaCrosse, the record title owner. Apex presented no evidence that it received any assurances of ownership from LaCrosse.[20]

Given these facts, the court concluded that Garza's possession was not "compatible with another's assertion of ownership." [21] Thus, Garza's possession was deemed unequivocal, and the Court charged Apex with constructive notice of Garza's unrecorded interest in the property.[22]

Twentieth Century contends that the case of *Apex Fin. Corp. v. Garza*, 155 S.W.3d 230 (Tex.App.2004) further highlights the key distinction for purposes of constructive notice between a purchaser at

18. *Id.*

19. *Id.*

20. *Apex Fin. Corp. v. Garza,* 155 S.W.3d 230, 235 (Tex.App.2004).

21. *Id.*

22. *Id.*

an execution sale who has no dealings with the record title owner and a hypothetical bona fide purchaser who is affirmatively misled by the record title owner regarding his ownership interest. In *Apex*, the holder of an unrecorded quitclaim deed, Garza, brought an action against the holder of a sheriff's deed, Apex, to determine the rights and interests of the parties. The Texas Court of Appeals found that the holder of the quitclaim deed had superior rights to the property where the quitclaim deed holder's possession was visible, open, exclusive, and unequivocal so as to put the sheriff's deed holder on constructive notice of Garza's claim of possession.

Apex claimed that it was a bona fide purchaser of the property of the property without notice of Garza's claim of ownership under the unrecorded quitclaim deed. While the court of appeals noted that "a purchaser at an execution sale can qualify as a bona fide purchaser if the purchaser would have been considered a bona fide purchaser had the sale been made voluntary and in person by the judgment debtor," the real issue before the court was not whether Apex could qualify as a bona fide purchaser but whether Apex actually qualified as a bona fide purchaser.

It is also important to note that in *Apex* the property was occupied by the same party who claimed the unrecorded interest in same. In the case before the court, the third-party tenant, Landmark Chevrolet, was in possession of the property. The only modern Texas case to address the analogous third-party tenant situation is *In re Battros*, 1992 WL 695898 (Bankr. W.D.Tex.1992). In *Battros*, the bankruptcy court concluded that a third-party tenant's presence did not trigger a duty of inquiry on the part of a hypothetical purchaser where the tenant's possession was compatible with the record titleholder's ownership of the property.

In *Battros*, the debtors owned a 65 acre tract of land that they had long used as a weekend retreat. Prepetition, the debtors hired Maria Pavila to live on and take care of the property. She cleaned the house while her husband helped to keep the grounds. Upon the graduation of their daughter from college, the debtors transferred the property to their daughter and told Pavila that she would be working for their daughter. Following the transfer, the daughter continued to use the property as a weekend retreat and the caretaker continued to live on the property and care for same as she had before the transfer. Two years later, the debtors filed bankruptcy. Post-petition, the daughter discovered that the deed had not been properly filed and the bankruptcy trustee sought to avoid the transfer pursuant to § 544(a)(3).

The bankruptcy court found that the transfer could be avoided under § 544(a)(3) as one against which a bona fide purchaser for value would prevail. The third-party tenant's presence on property did not trigger a duty of inquiry on the part of a hypothetical purchaser where the third-party tenant's possession was compatible with the record titleholder's ownership. The bankruptcy court held under Texas law, that a purchaser is not charged with constructive notice of a claimant's interest in property when the property is occupied by a third-party tenant whose possession is compatible with the record titleholder's ownership.

The daughter argued that, in Texas, the presence of Pavila on the land would have served as sufficient notice to prevent a subsequent purchaser from becoming a bona fide purchaser without notice. The

daughter argued that the presence of Pavila on the land constituted an actual possession of the land as her tenant or agent which was so inconsistent with ownership in the record title owner as to place any purchaser on inquiry notice of her interest, such that the trustee could not be a bona fide purchaser without notice for purposes of § 544(a)(3).

The bankruptcy court found that a hypothetical purchaser would have no duty of inquiry unless the daughter could show that the caretaker's presence on the property was inconsistent with the debtors' record title ownership interest in the property. The court concluded that the caretaker's presence on the land was not inconsistent with the debtor's record title interest. The court explained that "[p]ossession that could easily be referred to the person in whom stood the record title is not sufficient," to act as "implied notice of adverse ownership." [23] Inquiry is not "mandated by ambiguous or equivocal possession which may appear subservient or attributable to the holder of legal title because it is not sufficiently indicative of adverse ownership." [24] The court further noted that the caretaker's role never changed when the debtors transferred the property to their daughter. "From the point of view of an outsider, then, nothing changed." [25]

In both *Battros* and in the case before the Court, a third-party occupied the subject property in a manner subservient to the record title owner. In both cases, the third-party tenant occupied the property both before and after the unrecorded transfer. And in both cases, the third-party tenant's possession and use of the property did not change following the unrecorded transfer.

Landmark Chevrolet operated as a Chevrolet franchised dealership on the property at issue in this case since the 1970's. In October of 1985, Bill Heard Enterprises ("BHE"), purchased the Chevrolet dealership and Twentieth Century leased the property to the dealership. At all times, Landmark Chevrolet operated the automobile dealership on the subject property under the name Landmark Chevrolet. Landmark Chevrolet's operation of the property as an automobile dealership never materially change after it first began leasing the property from Twentieth Century in 1985 until the filing of BHE's bankruptcy petition. There was absolutely no visible change to Landmark Chevrolet's possession or operation of the property after Twentieth Century transferred the subject property to Landmark North in December of 2002. Just as in the *Battros* case, the character of the property and the use of same simply never changed after the unrecorded transfer. Landmark Chevrolet's use of the property did not change following the transfer. As stated in *Battros*, "From the viewpoint of an outsider, then, nothing changed."

The Court further notes that similar to the rental property in the *Madison* case, the property at issue in this case was traditional rental property within the automobile industry in which it is common for a dealership to lease or rent the property upon which it is located. Landmark Chevrolet's possession of the property was ambiguous or equivocal and appeared subservient or attributable to that of Twentieth Century, the record title holder. Land-

23. *Id.*

24. *Id.* at *2.

25. *Id.* at *2–3.

mark Chevrolet's possession was not sufficiently indicative of ownership to impute notice as a matter of law of Landmark North's unrecorded rights thereto. As the *Battros* court recognized, it would require a speculative leap of faith to hold that a purchaser would discover a claimant's interest in the property by inquiring of the third-party tenant where the third-party tenant's possession is compatible with the record titleholder's ownership. Although the parties engaged in a highly sophisticated transaction where title was shuffled from one debtor entity or subsidiary to another, the character of Landmark Chevrolet's possession of the property did not changed for almost twenty years. At all times both before and after the transfer, the property had been known as the Landmark Chevrolet dealership.

Landmark Chevrolet's possession of the subject property was not unequivocal because the dealership's possession of the property would have been compatible with Twentieth Century's title record ownership representations. Accordingly, the Court finds that a hypothetical purchaser would not have constructive notice of any adverse interest in the subject property, and Twentieth Century is entitled to avoid the transfer to Landmark North pursuant to § 544(a)(3).

The Court adopts all other findings of fact and conclusions of law set forth in its September 11, 2009 memorandum opinion reported at 420 B.R. 553 (Bankr.N.D.Ala. 2009).